BONAFFON (HILL v.). See Case No. 6,-488.

---

## Case No. 1,617.

### BONAPARTE v. CAMDEN & A. R. CO.

[Baldw. 205.][1]

Circuit Court, D. New Jersey. Oct. Term, 1830.

COURTS—SUIT BY ALIEN—INJUNCTION — GROUNDS —CONSTITUTIONAL LAW — RAILROAD CHARTER—IMPAIRING OBLIGATION OF CONTRACTS—EMINENT DOMAIN—PUBLIC USE—TAKING—COMPENSATION.

1. An alien resident in New Jersey, who holds land under a special law of that state, may sustain a suit in the circuit court relating to such land. The agents of a corporation may be sued in this court, though the corporation are not suable here.
[See Hughes v. Edwards, 9 Wheat. (22 U. S.) 496; Gassies v. Ballon, 6 Pet. (31 U. S.) 761; Breedlove v. Nicolet, 7 Pet. (32 U. S.) 431; Lorway v. Lousada, Case No. 8,517; Airhart v. Massieu, 98 U. S. 499.]

2. General cases for granting injunctions. It is no objection to an injunction that the defendant acts under the authority of a law, if he exceeds or abuses his power, or if the law is unconstitutional. But it will not be granted if there is a reasonable doubt of the validity of the law or the proper exercise of the power it confers; nor where there is a discretionary power given and exercised with judgment, and within the line prescribed; a party complaining will be referred to his remedy at law, or the special tribunal created by the law which gives the authority to do the act.
[Cited in Atkinson v. Philadelphia & T. R. Co., Case No. 615; Truly v. Wanzer, 5 How. (46 U. S.) 143; Scribner v. Stoddard, Case No. 12,561; City of Detroit v. Detroit City Ry. Co., 56 Fed. 898.]

3. An act of New Jersey incorporating a company to make a rail road, providing for the assessment of damages to the owners of land through which it passes, is not unconstitutional.
[Cited in Tufts v. Tufts, Case No. 14,233.]
[See Pearson v. Yewdall, 95 U. S. 296.]

4. The right to take private property for public use, is incident to all governments; but the obligation to make compensation is concomitant.

5. Though a law divesting vested rights, is not, per se, void, it is so if the right is by a contract, and compensation is not provided or made.
[See Holyoke Water-Power Co. v. Lyman, 15 Wall. (82 U. S.) 500.]

6. The constitution protects property against arbitrary seizure or divesture; not by legal process and on compensation made.

7. The legislature may prescribe the process of taking property for the public use; also the mode of ascertaining compensation without trial by jury.

8. The twenty-second article, securing the right of trial by jury, applies only to criminal cases, and civil cases where a right is to be tried at law; not to mere collateral questions of damages, where no suit is pending, and the right of both parties admitted.

9. A law cannot authorize the taking private property for any other than public use. What are public and private corporations?
[Cited in West River Bridge Co. v. Dix, 6 How. (47 U. S.) 543; Sweatt v. Boston, H.

---

[1] [Reported by Hon. Henry Baldwin, Circuit Justice.]

& E. R. Co., Case No. 13,684; Putnam v. Ruch, 56 Fed. 418.]

10. A road, canal, &c., is for public use, when the public have a right of passage on paying a stipulated, reasonable, and uniform toll, whether it is constructed by the state or corporation. But if the toll amounts to a prohibition, it is a monopoly and the road is not public.

11. The declaration in the charter, that the Camden and Amboy Rail Road is a public one, does not make it so, if the effect of the charter is to give the exclusive use to the corporation.

12. If it is not clear that the use is private, an injunction will not be granted.

13. Under a charter to construct a rail road from Camden to Amboy, with liberty to make a lateral road to Bordentown, and no route designated between Camden and Amboy, an injunction will not be granted, merely because the main road goes through Bordentown. The corporation must confine themselves to the route prescribed, but if there is a discretion not clearly abused, the court will not interfere by an injunction.

14. If the corporation has encroached on any public right at Bordentown, or usurped a franchise at a place not authorised by the charter, it is a proper case for the state to interfere by indictment or quo warranto in a state court. But an individual is not entitled to an injunction against the taking his land for the road, if by any reasonable construction of the charter, there is a power to locate the road through it.

15. Where the charter authorises an entry on land for the purpose of locating the road, and directs the location to be made, and a survey of the route of the road to be deposited in the office of the secretary of state; and when the location is determined on and the survey so deposited, the corporation may take possession of such land, use and occupy it for the construction of the road. The location, and deposite of the survey, are conditions precedent to their authority to enter for the purpose of constructing, and their entry for such purpose is a proper subject for an injunction, if the condition is not performed. An entry on private property, for the mere purpose of locating a road, is not taking it, this power may be given by law without compensation other than for any injury done to it, as the right remains in the owner. But where the divestiture of the owner's right is claimed, and its transfer is necessary for public use by a permanent appropriation of the soil, compensation must be made.

16. A law which directs the taking private property for public use, is not void because it contains no provision for compensation, or the mode of ascertaining it, the law is valid if this is done by a subsequent law.

17. But the execution of the law will be enjoined, till such provision is made by law, and the compensation paid.

18. The payment must be simultaneous with the disseisin of the owner, and the appropriation of his property. The owner must not be put to his remedy. But semb., if the compensation is ascertained, its payment certain, the security undoubted, and the means of collection summary, the construction of the road may be begun before actual payment.
[Cited in Avery v. Fox, Case No. 674; Jones v. Florida, C. & P. R. Co., 41 Fed. 72.]
[See Eidemiller v. Wyandotte City, Case No. 4,313.]

19. The kind of injury impending, and the degree of its danger as a ground for an injunction, considered.
[Cited in Scribner v. Stoddart, Case No. 12,-561; Illingworth v. Atha, 42 Fed. 142;

Payne v. Kansas & A. V. R. Co., 46 Fed. 554.]

20. This case a proper one for an injunction.

[21. Cited in Commerford v. Thompson, 1 Fed. 424, to the point that equity may inquire into the motive of one seeking an injunction.]

In equity on a motion for an injunction on bill and answer. The bill set forth that the complainant [Joseph Bonaparte] was an alien, that in virtue of a special law of New Jersey, he was enabled to hold land in the state, and had purchased two thousand acres of land adjoining Bordentown, whereon he had made extensive and valuable improvements, at an expense of three hundred thousand dollars, and where he had resided for many years. That the improvements consist of valuable buildings, a park, pleasure grounds, embankments, roads, walks, a lake, gardens, and other works combining utility with ornament, in the enjoyment and possession of which he has been disturbed by the defendants [the Camden & Amboy Railroad Company], their officers and agents. That under colour of an act of assembly, incorporating said company for making a rail road from Camden to Amboy, they have entered upon the land of complainant, laid out and staked a road on and over the park, embankments, wharves and roads thereon, which, if constructed and completed as marked, will be to his irreparable injury. That the defendants have collected materials and workmen to commence the construction of said road, and through the premises, by taking possession thereof, and using the materials thereon found, have commenced excavations thereon, and threaten to proceed and complete the construction of the same, without consent of the complainant, or making him any compensation for the injury he will sustain before the road is finished. The bill then recites various objections to the validity of the act of incorporation, as well as various acts of the defendants, and denies their authority to enter upon his lands, and concludes with a prayer for an injunction. No affidavit is attached to the bill, but a special one was submitted with it, averring the material facts stated in the bill.

The answer of the defendants admits that a line has been run through the land of complainant, designating the route of the railroad; but denies that any final location has been made. They aver that if the road is constructed as laid out, it will produce no injury to the plaintiff which cannot be compensated in damages; that it is necessary for the objects of the incorporation, that the road should pass through his premises; as it is the best route, they feel it to be their duty to the public and all interested, to locate it according to the report of the engineer of the company, who has reported this as the only practicable route, without an increase of the expense to the amount of 100,000 dollars. They deny that they ever intended to take possession of the premises, without the permission of complainant, due process of law, or just compensation, which they are willing to make. The answer concludes by objecting to the jurisdiction of the court over the parties, or the subject matter, because there are alien friends who are stockholders in the company and members of the corporation. In support of this objection, the affidavits of Joseph Billborough and Edwin J. Stephens were read, showing the former to be an alien, resident in Pennsylvania, and owner of one hundred and fifty-five shares in the stock of the company. The affidavit of William Cook, the assistant engineer of the company, was also read, stating the report of the principal engineer, and his own opinion, that the interest of the public and the company required that the road should be constructed through the complainant's premises, and that no irreparable injury would be done thereby.

Mr. Wall, for complainant.

1. The act of incorporation is repugnant to the twenty-second article of the constitution of New Jersey, which provides, "that the common law of England, as well as so much of the statute law as has heretofore been practiced in this colony, shall still remain in force until they shall be altered by a future law of the legislature, such parts only excepted as are repugnant to the rights and privileges contained in this charter, and that the inestimable right of trial by jury shall remain confirmed as a part of the law of this colony without repeal for ever." It is provided by Magna Charta, that no man shall be put out of possession of his freehold lands or franchises, but by the lawful judgment of his equals, or by the law of the land, which is by due course and process of law. 2 Co. Inst. 45, 46. The only lawful mode of taking the land of a subject, without his consent, is by making him a full equivalent (1 Bl. Comm. 139), which is by a writ of ad quod damnum and an inquisition (1 Jac. Law Dict. 48), and is the process used when public or turnpike roads are laid out on the lands of individuals (3 Jac. Law Dict. 289, 294); which in England is never taken for public use without compensation awarded by a jury. The thirteenth section of this law takes away the right of trial by jury, by substituting in its place commissioners to assess damages, whose report is made plenary evidence of the right of the company to the land and materials required for the construction of the road. They are not directed to act according to the rules of the common law on the writ of A. Q. D., which directed a jury to inquire only into the damages sustained, but are authorized also to estimate the benefits accruing from the road, and to strike a balance between the value of the land taken and such benefits. This is manifestly unjust, because by the report the land is absolutely vested in the company, while the benefits of the road are speculative and pros-

pective. Though the fourteenth section professes to give a trial by jury, it is under such restrictions as make the right nugatory; for before it can be had, the court must set aside the report of the commissioners, on cause shown, of the sufficiency of which they judge; it is therefore no longer a matter of right, but of mere discretion. No law of this state can take away a constitutional right. Such law is void by the constitution of the state,—9 N. J. Law, 443; S. P., 2 Dall. 304 [Vanhorne v. Dorrance, Case No. 16,857],—as a law directing a jury of only six to decide on cases where the sum in controversy did not exceed 25 dollars, which was adjudged void,—Holmes v. Walton, cited 9 N. J. Law, 444,—and the legislature cannot give the power of a jury to commissioners, if they cannot give it to six men as a jury.

2. This is a private company, incorporated for private objects, to whom the legislature cannot give the power of taking private property for their use, which is a monopoly, an exclusive right of passage on the road, unless on conditions which they may make so onerous as to amount to a prohibition in effect. Though the twenty-eighth section of the act declares the road to be a public highway, such declaration does not make it one, if the terms and provisions of the law show it to be one for private emolument rather than public convenience.

3. Before the company can enter upon private property they must have made an equitable assessment of its value, and the compensation must be made before possession is taken. Gardner v. Trustees of Newburgh, 2 Johns. Ch. 166. It cannot be left to future adjustment according to the fourteenth section, but must be paid before the construction of the road is commenced, though by the thirteenth section the road may be located before compensation can be demanded.

4. By the thirteenth section of the law, the filing a copy of the survey of the road, as located, in the office of the secretary of state, is made a condition precedent to any right of constructing the road. The bill charges, and the answer admits that this has not been done, which is a sufficient ground for an injunction till the survey is filed.

5. The eleventh section gives no authority to locate or construct the main road at Bordentown; they can only take a lateral road to that place, consequently they cannot locate the main road, as has been done, on the complainant's premises. It is an evasion of the law, annulling its provisions to all intents and purposes. It is obviously the intention and direction of the law, that until the main route was completed, the road should connect with the Delaware river only at the beginning point. The twelfth section, which authorizes the construction of a lateral road, is a proviso to the eleventh, which, as the last expression of the will of the legislature, repeals and controls any part of the eleventh

which might imply the same power; it makes the construction of the main route a condition precedent to the construction of the lateral road (vide Fitzg. 195); the company therefore have no power to locate the road to Bordentown till that condition is complied with.

6. This is a proper case for an injunction according to the rules of equity. Jeremy, Eq. Jur. 308. It lies for diverting a stream of water by virtue of a law, if no provision is made for compensation to the owner (2 Johns. Ch. 162), where there will be an injurious interruption of the enjoyment of property (Id. 463, 473); and in a case otherwise proper, will be granted against the trustees of a college, turnpike, or canal commissioners, where they abuse, exceed, or deviate from their authority (1 Ves. Sr. 188; 2 Dow, P. C. 519); or a canal company (Coop. 77).

7. On the face of the bill the court has jurisdiction, as it will be presumed that a corporation created by the law of a state is composed of the citizens of the state. Bank of U. S. v. Deveaux, 5 Cranch [9 U. S.] 88, 90; 1 Paine, 609, 610 [Catlett v. Pacific Ins. Co., Case No. 2,517]. The want of jurisdiction must be pleaded, the court will not act on affidavits, but the company are not necessary parties; the agents by whom they act are citizens of the state, are made defendants, and have answered; the nonjoinder or misjoinder of parties does not affect the jurisdiction of the court, they can enjoin their agents (1 Paine, 410 [Ward v. Arredondo, Case No. 17,148]; [Wormley v. Wormley] 8 Wheat. [21 U. S.] 421; [Carneal v. Banks] 10 Wheat. [23 U. S.] 181); so the agents of a state, though the state is not suable, ([Osborn v. Bank of U. S.] 9 Wheat. [22 U. S.] 738).

Mr. Sloan and Mr. Wood, for defendants.

1. The plaintiff being an alien, holding land by a special act of the legislature, has no right but what is common to all the citizens of the state; consequently cannot sue one in the courts of the United States. If, however, he could sue a citizen, he cannot sue a corporation, one of the members of which is an alien, for this court has no jurisdiction in a case where both parties are aliens. [Browne v. Strode] 5 Cranch [9 U. S.] 303. All the plaintiffs are one party, all the defendants the other, and each must be capable of suing and being sued; if a corporation is sued, all the members must be averred to be citizens. [Bank of U. S. v. Deveaux] Id. 85, etc.; 4 Wash. C. C. 595 [Kirkpatrick v. White, Case No. 7,850]. It is not sufficient that Stephens and Sloan, the agents of the company, are citizens, if they have no interest. In the Case of Osborn, 9 Wheat. [22 U. S.] 738, the court enjoined the agent, because the state could not be sued, and the law under which the agents acted being void, they were considered as principals. Here all the members of the company have a joint inter-

est, claiming a joint right; they must therefore all be made parties, and the court cannot proceed against those who are agents without affecting the rights of all.

2. The twenty-second article of the constitution applies only to the right of jury trial in criminal cases, and suits between individuals, not to cases where public convenience requires that private property should be taken for public use. Before its adoption, the colonial legislature directed damages caused by roads to be assessed by commissioners, it was the common mode of ascertaining compensation before the revolution (Leaming & Spicer, 440; Allison, 274); since the adoption of the constitution, the legislature have acted in both ways at their discretion, they have directed the valuation by commissioners, or by an inquest, at their pleasure. In the cases of Dorsey v. Morris Canal Co. and Certain Land Owners v. Same the chancellor decided, that the law providing for the assessment of damages by commissioners was valid, and no contrary decision has ever been had in the state. It is enough that an impartial tribunal is appointed, commissioners act as arbitrators appointed by the court; the owner of the land is not bound by their award, which the court may set aside if illegal, and if the thirteenth section is unconstitutional, all proceedings under it will be annulled, and the owner will then have a trial by jury. The plaintiff holds his land subject to requisitions by the state for public use, the right to take it is recognized by the fifth amendment to the constitution of the United States, provided just compensation is made; but the legislature may prescribe the mode of ascertaining it, and this amendment, as well as the constitution of the state, must be construed with a reference to the previously established practice. Neither the proprietary or state government, made any compensation to the owners of land through which public roads were laid out, as five per cent. was allowed by the proprietors in all grants for that purpose. Compensation was first allowed, when companies were incorporated to make roads; this was in the power of the legislature, and when a road is so made, it is as much a public road for public use, as if made by the state. 20 Johns. 743. The twenty-eighth section declares this to be a public highway, and its termini and route show it to be a most important part of a great national communication, important to the whole country. Besides, the state has a present right to become owners of one-fourth of the stock, and a reversionary right to purchase the road after thirty years, and they have a revenue from the tolls, which the defendants swear will amount to ten thousand dollars a year. The provision that the commissioners shall deduct the benefits of the road from the damages it occasions, is neither unconstitutional or unjust; both items necessarily enter into the question of damages, all that is re-

quired is, that the compensation shall be just, equitable, and reasonable. 3 Mass. 310; 5 Mass. 435; 9 Mass. 388; 1 Pick. 425. This is not the tortious taking of property, it is done by the supreme power of the state for public benefit, to which each ought to make a common contribution, and no one ought to receive a compensation exceeding the injury he has actually sustained. In ascertaining its amount, the legislature were not bound to adopt the mode in use in England; but the plaintiff's counsel are mistaken in taking it for granted, that it is by an ad quod damnum, that writ is used only where the king creates a franchise, or gives a license to exercise one. 1 Jac. Law Dict. 48, 49. It is not used where private property is taken by the authority of an act of parliament (vide 2 Dow, 519, &c.); it is done by commissioners. The meaning of Magna Charta is not that there shall be a trial by jury, when the exigencies of the public require that private property shall be taken for public use, it only provides, that it shall not be taken without legal process or due course of law, which the legislature is competent to prescribe. The same provision is contained in the fifth amendment to the constitution of the United States: "No person shall be deprived of property without due process of law;" this and the next clause were intended to guard against arbitrary seizures of property without a proceeding according to law and just compensation.

3. It is admitted that the company are bound to make just compensation, but assert their right to take the property before it is made; from the nature of this right, it must precede the obligation. But though this is claimed as a right, the defendants in their answer disclaim its exercise, averring their intention to be to make compensation before taking possession of complainant's property. His affidavit does not aver the contrary, and the court cannot grant the injunction till an attempt is made to take possession. The law gives complainant ample security, as he has a lien on the whole property of the company, on the filing the report of the commissioners, as well as a summary remedy to enforce payment, which satisfies every reasonable demand of the owner, as the lien for damages attaches the moment the right to the land passes to the company. This too is the natural order of proceeding, the land is first taken, in doing which the company are not trespassers, as they enter by authority of law. 20 Johns. 744; 3 Mass. 310. The damages are then assessed, and process goes out to collect them.

4. It is admitted that the survey has not been deposited as directed by law, but the defendants aver in their answer, that the delay was from a desire to consult with and accommodate the complainant; it is not for him to allege this as a ground for an injunction, nor is it a ground for the interference of the court, being a mere matter of irregularity,

the omission does not make the company or their agents trespassers (20 Johns. 743), or afford any ground for arresting the progress of the work.

5. The law does not prescribe the route of the road, it only designates the beginning points, leaving the intermediate route to be located according to the discretion of the company; in such case the court cannot control its exercise, if the proceeding has been in good faith, and within the authority conferred by the law, or affix any limitations not imposed by the legislature. A power to construct a road from one place to another, gives a discretionary ·power as to the selection of the route; such law must receive a liberal construction, and there must be a clear departure from its directions, before a court can interfere. 10 Johns. 389. By the eleventh section a general authority is given to construct the road between the two points, the right to make a lateral road given in the twelfth section is a privilege; the two sections will be so construed as to make them harmonize, and by the words of the law alone. If the company has a colourable right, and the court have a doubt, if there is room to deliberate on the question, whether they have exceeded or abused their power (4 Johns. Ch. 21), a court of chancery will not interfere by injunction. The case must be referred to the supreme court, which has a prerogative jurisdiction over all corporations, to the same extent as the court of king's bench in England. 2 Johns. Ch. 371, 386; 16 Johns. 13, 14. An injunction is granted, only in a clear case of the excess or abuse of jurisdiction, of which state courts are the appropriate judges in all cases where questions arise about the extent of the authority given by state laws, or on the local common law. [Jackson v. Chew] 12 Wheat. [25 U. S.] 153. On this subject the answer is full, that the location of the road has been made solely with reference to the public convenience and the benefit of the corporation, according to the best discretion of its officers. The only question which can arise is, whether the company have usurped a franchise on the property of the state, or on a route which they were prohibited by their charter from selecting. This is a question affecting the state alone, as to individuals, the acts of the corporation will be presumed valid, unless the state interferes by indictment for a nuisance (18 Ves. 622), or their proceedings are declared illegal on a certiorari, or quo warranto in the supreme court of the state. A court of the United States will not interfere, unless there appears to be a clear departure from the authorized route prescribed and defined in the act of incorporation, which is not pretended here.

6. The injury complained of is not a subject matter for an injunction, if it is a trespass there can be full and adequate remedy in damages; the complainant's possession is not disturbed in his mansion-house, improvements, or other parts of his land, he can use them as before. The only injury is taking the ground occupied by the bed of the road, for which full and complete compensation can be made. It is not like the case of a private nuisance by the diversion of a water course, as in 2 Johns. Ch. 162, and Eden, Inj. 165, where a trespass has become a nuisance, or where there is a privity, as between landlord and tenant, tenant for life and reversioner. To justify an injunction the injury must be irreparable, or so great as to be destructive of the property to the owner for all the purposes to which he had devoted it, and for which there is no adequate remedy at law. 1 Johns. Ch. 318. On this subject the answer and affidavits are full to show that the injury is not of such a nature, nor does the complainant aver it in his affidavit. The court will not regard the averments of the bill, but look to the affidavits on both sides (18 Ves. 622; 1 Swanst. 250; Coop. 77); from which it will be apparent, that the only injury will be to pleasure grounds, roads, a park, &c.; whereas, if the injunction is granted, it will interrupt a great public work, produce injuries which can never be repaired, and for which the company can have no redress, as it will have been caused by the act of the court. They will not grant the injunction if they entertain any doubt upon any point in the case.

Mr. Wall, in reply.

1. By the eleventh section of the judiciary act [1 Stat. 78], the complainant has a right to sue in the courts of the United States as an alien, of which he cannot be deprived; he is authorized to hold lands in this state, with the same rights of property as any other· citizen, he claims no other rights under the law of the state, but is not compelled to renounce such as are given him by the constitution and laws of the United States. By answering, the defendants submit to the jurisdiction of the court, and cannot now object to it as they ought to have pleaded it [Mason v. The Blaireau] 2 Cranch [6 U. S.] 264. They do not deny their citizenship; the court have jurisdiction of the subject matter of the bill, and over the persons who, as agents of the company, have done and threaten to do the acts complained of; it is not material that the persons for whose benefit the acts are done, are not in court or within their jurisdiction, an injunction against the actors. answers all the objects of the bill. Jurisdiction cannot be ousted by an affidavit, or on the suggestion of a stockholder.

2. Formerly the king could not grant a monopoly without an ad quod damnum, now he can do it by a dispensation, with a clause of non obstante, this is the meaning in 1 Jac. Law Dict. 48. 49, but he cannot by this authorize the property of a subject to be taken. In England the general road law directs compensation to be made by a jury,

if the owner and surveyor cannot agree on the value of land taken for a road. 13 Geo. III. c. 78; 11 Ruffh. St. 850, 851. The laws of New Jersey relating to public roads, give merely an easement on the lands of individuals, without impairing the right of soil; but when companies are incorporated for making roads, they become owners of the land on which they are located, the owner is disseised and his right divested. The mere subjecting the land to an easement for the public benefit, is very different from granting it to a corporation. It is a fundamental principle, that where governments take private property, compensation is made by agreement, as in the case of the Isle of Man, by persons chosen by the parties, or by judicial process, through the intervention of a jury,—2 Dall. 313 [Vanhorne v. Dorrance, Case No. 16,857],—and must be paid before the title of the owner is affected. This road is for private use, the charter is for a transportation company, who may charge tolls which amount to a prohibition; unless the public will submit to the exaction of six dollars for each passenger, and four dollars eighty cents for a ton of merchandize, there can be no right of passage; this right excludes all competition by the creation of a monopoly for the benefit of the company, which, of itself, divests the road of every attribute of a public highway. If the power to exact tolls was limited to such as are reasonable and uniform, it might be deemed a public corporation, so as to justify a law to appropriate private property for its use. But the features of the charter are such as stamp it with a private character, and the company must be left to make their contracts with the owners of property through which the road passes. We have a right to an injunction if the defendants omit any act required by the law, or violate it in any way; they admit that they have neither filed the survey of the road, or made compensation, yet they aver their intention to construct the road, and that they are making preparations to do it. They have exceeded their authority and violated the law by locating the main road on the Delaware, when they could make only a lateral one to it. We are not bound to wait till the company actually take possession; when they assert their right and avow their intent to do it, the court will restrain them if they are not strictly justified by the law.

The court took time to consider the case, and had met for the purpose of delivering their opinion; as it was about to be read, it was suggested that the parties were about making an adjustment, whereupon the delivery of the opinion was suspended to give them an opportunity of doing it. The parties came to an agreement and the opinion was not read, but as the questions involved were important, and might recur, it is thought proper to publish it.

BALDWIN, Circuit Justice. The eleventh section of the judiciary act gives jurisdiction to this court, in all cases of a civil nature at common law or in equity. 1 Story [Laws] 57 [Act Sept. 24, 1789; 1 Stat. 78]. The complainant has therefore a right to sue here, independently of any state law. It attaches to his character of an alien, which is admitted in this case, and as he holds his land by the law of this state, it matters not whether it is a general or special one, his right of property gives him the same remedy for its violation, as to an alien residing abroad or a citizen of another state. Although it may well be doubted whether the alienage of Mr. Billborough could be taken advantage of by a mere suggestion in the answer, the same effect will be given to it as to a plea. It is not necessary to inquire, whether it would affect the jurisdiction of the court if the corporation was the only defendant, because Mr. Stephens and Mr. Sloan, two of the defendants are admitted to be citizens of the state, and competent parties to the suit. The court can take cognizance of the case as to them, though it could not as to the corporation, as has been heretofore decided by this court. Kirkpatrick v. White [Case No. 7,850]. These defendants too are members, directors, and agents of the company for laying out and constructing the road; they act in the name and by the authority of the company, who must be represented by agents, but this gives the agent no exemption from legal responsibility. If they exceed, abuse, or depart from the power given by the law, they are answerable in the same manner as if they acted in their own right, without making the company parties to the suit, if they are not within the jurisdiction of the court, or are exempted from being sued; there is the same remedy against the agent as against the principal, if suable. The privilege or exemption of the principal, is not communicated to the agent, though the principal is a state which cannot be sued at law or in equity, and the agent a public officer acting in execution of a law of the state, and the subject matter of the suit was money actually in the treasury, in the custody of the defendants for the use of the state. Osborn v. Bank of U. S., 9 Wheat. [22 U. S.] 743, 744. In that case the state was not a party, yet an injunction was awarded. The court, looking only to the illegality of the law by which the money had been obtained, through the instrumentality of the agents of the state, disregarded all considerations relating to the principal, for whose benefit or by whose orders the illegal acts had been committed. There are then proper parties before the court to enable them to make a final decree, and to enforce it against the agents of the company, if a proper case is made out for an injunction in other respects. The adjudged cases on this subject support this position. 1 Pet. C. C. 317, 320 [Willings v. Consequa, Case No. 17,767]; Jay v. Wirtz

[Kerr v. Watts] 6 Wheat. [19 U. S.] 559; [Wormley v. Wormley] 8 Wheat. [21 U. S.] 451; [Thornton v. Wynn] 12 Wheat. [25 U. S.] 189; [Dandridge v. Washington] 2 Pet. [27 U. S.] 377; [Caldwell v. Taggart] 4 Pet. [29 U. S.] 203, 204. If we should yield to the objection arising from the alienage of Mr. Billborough, it would establish a principle by which a corporation could always elude the justice of the law, by having some shares of the corporate stock held by an alien or a citizen of some other state.

The principles settled by the supreme court in Osborn v. Bank of U. S. [supra] would seem to remove all objections to the power of this court to grant an injunction against persons acting under a law of a state, authorizing the construction of works of public improvement. But the doubt expressed by Judge Washington in 4 Wash. C. C. 601, 608 [Haight v. Morris Aqueduct, Case No. 5,902] whether a court of equity could treat such acts as a private nuisance, however injuriously it might affect a complainant, is deserving of serious consideration. There is no power the exercise of which is more delicate, which requires greater caution, deliberation, and sound discretion, or more dangerous in a doubtful case, than the issuing an injunction; it is the strong arm of equity, that never ought to be extended unless to cases of great injury, where courts of law cannot afford an adequate or commensurate remedy in damages. The right must be clear, the injury impending or threatened, so as to be averted only by the protecting preventive process of injunction: but that will not be awarded in doubtful cases, or new ones, not coming within well established principles; for if it issues erroneously, an irreparable injury is inflicted, for which there can be no redress, it being the act of a court, not of the party who prays for it. It will be refused till the court are satisfied that the case before them is of a right about to be destroyed, irreparably injured, or great and lasting injury about to be done by an illegal act; in such a case the court owes it to its suitors and its own principles, to administer the only remedy which the law allows to prevent the commission of such act. We know of no rule which excludes from this process any persons over whom the court has jurisdiction, on account of the character or capacity in which he acts, although it is conferred upon him by a law of a state or of congress. If the law is unconstitutional, it can give no authority, if the power it confers is abused or exceeded, the person who acts by colour of law merely is a trespasser; and wherever the court have power to take cognizance of an action of trespass for an offence, a court of equity may, in a case otherwise proper, prevent its commission, as was decided in Osborn's Case, 9 Wheat. [22 U. S.] 738. An injunction was granted against the United States by this court (Armstrong v. U. S. [Case No. 549]); so by the supreme court

against the overseers of the poor of a parish (Terrett v. Taylor, 9 Cranch [13 U. S.] 43, 55); by Chancellor Kent against a corporation, claiming to act in pursuance of a law of the state (Gardner's Case, 2 Johns. Ch. 162); and in Belknap v. Belknap, Id. 463, against the inspectors of a corporation for draining marshes. The chancellor cites with approbation the cases in England, where injunctions have been granted against the trustees of a college (1 Ves. Sr. 188), the commissioners of a turnpike (Id.) a canal company incorporated by act of parliament (Coop. 77), canal commissioners (2 Dow, P. C. 519; S. P., 1 Swanst. 244, 250; 4 Johns. Ch. 26; 2 Dickens, 600; vide 2 Johns. Ch. 376–380). In Jerome v. Ross, 7 Johns. Ch. 334, and Rogers v. Bradshaw, this distinguished jurist asserted the same principle, in its application to the commissioners for the construction of the great New York canal (20 Johns. 745), as an established rule of courts of equity; to which may be added the declaration of Judge Washington, in 4 Wash. C. C. 605 [Haight v. Morris Aqueduct, Case No. 5,902]. It must then be taken as settled, that the circumstance of a defendant acting under colour of a law, or as the agent of a corporation for making a road, canal or other improvement, is not of itself a good objection to the granting an injunction. When there is a reasonable doubt whether the law set up as a justification authorises the acts done, it will not be granted (2 Dickens, 600; Coop. 77); or if a discretionary power is given, which is not abused or misapplied, but exercised in good faith, sound discretion, and according to the best judgment of those to whom its execution is confided, the party complaining will be left to his remedy at law. 1 Johns. Ch. 184; 4 Johns. Ch. 352; 7 Johns. Ch. 340; 20 Johns. 739, 740. The court cannot control them in mere matters of discretion (vide [U. S. v. Arredondo] 6 Pet. [31 U. S.] 739); they must keep strictly within their powers, must not deviate from the line or route prescribed, abuse, misapply, or exceed their authority; when they do so, a court of equity will leave a complaining party to resort to the special tribunal designated by the law, to decide on all questions arising in its execution; but if they act otherwise, the court will proceed in the usual way, by injunction. 2 Dow, P. C. 521, 523.

Having no doubt of our jurisdiction, both of the parties and the subject matter in this case, we proceed to the grounds of the injunction.

1. It is alleged that the act incorporating this company is repugnant to the constitution of the state, in appointing commissioners to ascertain damages instead of a jury. This is a question of great delicacy and importance, affecting the rights of every man, and perhaps of every government in the union, the constitution of which does not define the mode of making compensation for private property, taken for public use. If the law

in this respect is incompatible with the constitution of the state, we must declare it void, and the exercise of any authority under this part of it illegal; but before doing it we must have a clear conviction of the incompatibility between them. [Marbury v. Madison] 1 Cranch [5 U. S.] 138; [Dartmouth College v. Woodward] 4 Wheat. [17 U. S.] 625. A law of a state, not repugnant to its constitution, is by the thirty-fourth section of the judiciary act made a rule for our decision, in all cases to which it applies, unless the constitution, laws or treaties of the United States otherwise provide.

It is a settled principle of American jurisprudence, that the transcendent powers of parliament devolved on the people of the several states by the revolution [Dartmouth College v. Woodward] 4 Wheat. [17 U. S.] 651; [Johnson v. M'Intosh] 8 Wheat. [21 U. S.] 584; [Wilkinson v. Leland] 2 Pet. [27 U. S.] 656. It necessarily follows, that the only restraint on their legislative power, is that imposed by their own, or the constitution of the United States. [Satterlee v. Matthewson] Id. 410, 414. That of New Jersey contains no bill of rights, or any other restriction on the legislative power than the twenty-second article which has been referred to; of course its action is uncontrolled, if the right of trial by jury is preserved inviolate in the cases contemplated by the constitution. It is silent on the subject now before us for an obvious reason, it is an incident to the sovereignty of every government, that it may take private property for public use; of the necessity or expediency of which, the government must judge, but the obligation to make just compensation is concomitant with the right. Vatt. Law Nat. 112; Ruth. Inst. 43; Burlam. Nat. 150; Puff. Law Nat. 829; Gro. De Jure B. 333. This principle of public law is recognised in the fifth amendment to the constitution of the United States, as to the right and obligation, which may be deemed a bill of rights for the people of each state. [Fletcher v. Peck] 6 Cranch [10 U. S.] 138. Though it may well be doubted whether as a constitutional provision, this applies to the state governments,[2] yet it is the declaration of what in its nature is the power of all governments, and the right of its citizens; the one to take property, the other to compensation. The obligation attaches to the exercise of the power, though it is not provided for by the state constitution, or that of the United States had not enjoined, and exists in this case if the legislature had power to grant the charter to this corporation. Though the divesting of vested rights of property, is no violation, per se, of the

---

[2] Since this opinion was prepared, the supreme court have decided, that this amendment does not apply to the states, but only to the general government. Barron v. Baltimore, 7 Pet. [32 U. S.] 247; Lessee of Livingston v. Moore, Id. 551, 552.

constitution of the United States,—[Satterlee v. Matthewson] 2 Pet. [27 U. S.] 412, 413,—yet when those rights are vested by a contract, its obligation cannot be impaired by a state law. [Fletcher v. Peck] 6 Cranch [10 U. S.] 137; [State of New Jersey v. Wilson] 7 Cranch [11 U. S.] 164; [Terrett v. Taylor] 9 Cranch [13 U. S.] 45; [Dartmouth College v. Woodward] 4 Wheat. [17 U. S.] 625. In this case the complainant by his contract of purchase, authorized by the law of the state, comes so far within this protection, that his property cannot be transferred to the defendants without his consent by mere legislative power. To make such transfer valid, it must be an appropriation to a public use, in virtue of the inherent sovereignty of the states, which carries with it the obligation to make compensation. When this is done, no contract is impaired, as all persons hold their property subject to requisitions for public service, it is protected only against arbitrary seizure, not when it is taken or appropriated by public right for public use; compensation must indeed be made, but no particular mode is prescribed by which its amount shall be ascertained. It is a principle of Magna Charta, recognised in all the states, that no man shall be disseised or dispossessed of his property without due process of law, or legal process, or the judgment of a jury (2 Co. Inst. 45); but if either mode is pursued, the principle is unimpaired. A law which authorizes the appropriation of property to public use, and prescribes a mode of proceeding by which compensation shall be ascertained and made, is not obnoxious to Magna Charta, or its construction in England or this state. An inquisition on a writ of ad quod damnum, is the usual mode, when a franchise is granted by prerogative, but when a corporation is created by act of parliament, it does not seem to be usual; it certainly is not necessary to give validity to the charter, or power to do the acts it authorizes. The writ of ad quod damnum appears not to have been in such common use in this state, before the adoption of the constitution, that it can be supposed to have been indispensable; on the contrary, the appointment of commissioners was usual from a very early period. Leaming & Spicer, 440; Allison, 274. It has been continued to the present time, and held by the late learned chancellor of the state to be constitutional. This usage, judicially sanctioned, must be taken as the practical exposition of the constitution and antecedent common law of the state, from which we do not feel at liberty to depart; it is also a common practice in England (vide 11 Ruffh. St. 765; 2 Dow, P. C. 521), and in the other states, to appoint commissioners or other special tribunals to assess damages, by some mode or process specially prescribed, where a permanent appropriation of private property is made for a public use, on a

road constructed by a state or a corporation. When a mere easement or right of passage is granted, it is usual to do it by a jury (11 Ruffh. St. 850); but it is competent to prescribe by law any other process for the same purpose. We are therefore of opinion that the trial by jury is preserved inviolate in the sense of the constitution, when in all criminal cases, and in civil cases when a right is in controversy in a court of law, it is secured to each party. In cases of this description, the right to take, and the right to compensation, are admitted; the only question is the amount, which may be submitted to any impartial tribunal the legislature may designate. At the same time we fully concur in the decision of the supreme court of the state, that when a jury is necessary, the legislature cannot reduce the number required by the common law, which defines a jury to be a body of twelve men. It has not been contended that this provision of the constitution applies to proceedings in chancery or the orphans' courts of the state, nor does there seem any better reason for applying it to collateral process for assessing damages where no suit is pending; it is a speedy and cheap mode of adjusting such matters, which are within the discretion of the legislature, unless prohibited by the constitution of the state. In Bennett v. Boggs [Case No. 1,319], we gave our opinion of the extent of the powers of the government of this state and their limitation, which need not be repeated now; we adhere to the views there expressed, and refer to them for more detailed reasons in favour of the validity of the part of the law now under consideration. A similar construction has been given by the supreme court of the United States to the seventh amendment to the constitution of the United States, which directs that "in all suits at common law, when the sum in controversy exceeds twenty dollars, the right of trial by jury shall be preserved." The occupying claimant law of Ohio directed commissioners to be appointed to value the improvements made upon land recovered by ejectment on an adversary title: it was held that the law was not repugnant to the constitution of the United States, and could be executed in the courts of the United States if it was not repugnant to the constitution of Ohio. Bank of Hamilton v. Dudley, 2 Pet. [27 U. S.] 525, 526. As the proceeding to ascertain damages under the law in question is neither a suit at common law, or the trial of a right in a court of common law jurisdiction, we are clearly of opinion that it is consistent with the constitutions of the state and of the United States.

2. It is next objected to the validity of this law, that it is to effect a private object, in making a road for the benefit of the corporation, and not for public use; that consequently the legislature have no power to authorize the appropriation of any part of the complainant's property for such purpose without his consent. If the law is clearly open to this objection, it is a fatal one, as it is opposed to every constitutional principle which protects the rights of property, to take it from the lawful owner and appropriate it to the private use of another, or a private corporation for its own use. Generally speaking, public corporations are towns, cities, counties, parishes, existing for public purposes; private corporations are for banks, insurance, roads, canals, bridges, &c., where the stock is owned by individuals, but their use may be public. [Dartmouth College v. Woodward] 4 Wheat. [17 U. S.] 664. A road or canal constructed by the public or a corporation, is a public highway for the public benefit, if the public have a right of passage thereon by paying a reasonable, stipulated, uniform toll; its exaction does not make its use private. If the public can pass and repass, and enjoy its benefits by right, it matters not whether the toll is due to the public or a private corporation; the true criterion is, whether the objects, uses and purposes of the incorporation are for public convenience or private emolument, and whether the public can participate in them by right, or only by permission. To ascertain this, the provisions of the law must be examined. The second section gives all the powers necessary to "perfect an expeditious and complete line of communication from Philadelphia to New York;" this is undoubtedly a great public and useful purpose, than which none can be more important, as a link in the great chain of national communication. The twenty-eighth section declares the road to be a public highway, and we should feel bound to so consider it, if other parts of the law did not give it a different character. The sixteenth section authorizes a toll which, estimating the length of the road at sixty miles, would amount to 6 dollars for each passenger, and 4 dollars 80 cents a ton for merchandise transported upon it, and the company is incorporated as a "transportation company." In this there are strong features of a monopoly for the sole benefit of the corporation; the toll cannot be called a reasonable one, and the public cannot use the road by right, when they may be subject to the payment of a toll, which is equivalent to a prohibition. These considerations have led our minds to strong doubts whether the declaration of the legislature is not in direct collision with the provisions of the law, but not so strong and clear as to justify us in declaring the law unconstitutional and void, on an application for an injunction.

3. The next ground taken by the complainant is, that the law gives the company no right to locate the road on his land; inasmuch as they were not authorized to construct any other but a lateral road to Bordentown, and the main route, as now located

and about to be constructed, is at that place. No particular line or route is designated in the law, the only definite points are the beginning and end of the road; there is enough in the law to infer the intent and meaning of the legislature to have been, that the main route should be at some distance from the Delaware at Bordentown, but it is not expressed so clearly as to prohibit its present location. We cannot say that the company had not a discretion in the selection of an intermediate route, when none was accurately defined, or that they have not acted in good faith, with sound discretion, and by their best judgment. They may have deviated from the understanding of the legislature, in locating the main branch where they were authorized to construct only a lateral one, but they must depart from the prescribed line before their proceedings can be arrested as unauthorized, and the deviation must be apparent, so as to indicate the want of discretion and judgment in the execution of the law, and an abuse and misapplication of their authority. The answers of the defendants, with the accompanying affidavits, are so full on the fact of the location being made discreetly and in good faith, that we cannot act on the contrary belief; nor on referring the survey of the road to the law, can we say that it is located on prohibited ground. If it is a purpresture or encroachment on the right of the public to the navigation or landing on the Delaware, it is indictable as a nuisance in the state court, where the defendant would have a right to trial by jury. But a chancellor would not consider him as already convicted of the offence, by awarding an injunction before a trial. Columbian State Banking Co. v. Weldon, by Williamson, Ch.; 18 Ves. 217, 219; 19 Ves. 617, 620; 2 Johns. Ch. 283; Harg. Law Tracts, 85. An individual would be entitled to this remedy only in case the company should attempt to take possession of his land lying without the limits of the road as prescribed by the charter; but in this case, as none are defined, it must be left to the legislature to declare them by some future law, or by some legal proceeding in the state courts, to ascertain whether any right of the state has been violated by an usurpation under colour of law.

4. Assuming the validity of the law, the next objection to the proceedings of the company is, that they have not complied with its provisions, so as to have acquired any authority to enter upon and take private property for the purpose of constructing the road. This depends on the eleventh section, which authorizes the company to enter for two distinct purposes, 1st, to locate, 2d, to construct the road. For the purposes of location they may enter at all times, and erect necessary works and buildings, with no other restriction or condition than that they shall do "no unnecessary injury to private property;" but whenever they have ex-

ercised this authority, by which they are enabled to make a location, the law directs that it shall be determined on, and a survey of the route to be deposited; and then provides, "that when the location is determined on, and the survey is deposited in the office of the secretary of state, it shall be lawful for the said company, by its officers, &c. to enter upon, take possession of, use, occupy, and excavate any such lands, &c. for the purposes of constructing the road." This language can admit of no construction, it limits the authority to the case provided for, imposes two conditions which must be performed before the power arises, and which can be performed by no other persons than the officers or agent of the corporation. The marked distinction between the right of entering at all times to survey and locate, and to enter to construct only on the performance of the conditions precedent, leaves no doubt that the intention of the legislature corresponded with their words. Independently of the positive terms of the law, the nature of the conditions is such as to make the authority dependent on their performance. It would be most unreasonable, as well as unjust, to permit private property to be taken for the construction of a road before its location had been determined on by the company. And nothing can be more reasonable and just, than that after a definitive location is so made, there should be some authentic evidence of its route in a public office, to which all persons can have access. Unless this is done, no person could know what part of his property was put in requisition, or have any check on the company against altering or deviating from the route determined on. It could not have been the intention of the legislature to confer a power so undefined and illimitable, and as it is not given by the words of the law, we cannot do it by construction. The defendants, in their answer, admit that the final location of the road is not yet determined on, and that the survey is not yet deposited; they cannot therefore have the authority of the law for entering on or taking possession of any part of complainant's property, for the purpose of constructing the road. The omission is exclusively their own, the law gave them ample powers to enter on the premises of individuals for every purpose of location, it pointed to the acts on which their power to construct depended; they have not thought proper to comply with the conditions imposed, the consequence is obvious. The company will be trespassers if they disturb the possession of the complainant, and the court must proceed in the usual way, if he has made out his case.

Compensation is the next subject to be considered. Taking it as an universal principle, that the right of every government to take private property for public use, and the obligation to make just compensation are unquestionable and concomitant; taking it also

as settled, that though the corporation created by this law is private, the objects and uses to be effected are public. The first question arising is, for what compensation must be made; or, in other words, what is the taking of private property for public use, by a canal, rail road, turnpike, or other improvement or work, to be constructed for public convenience? An entry on private property for the sole purpose of making the necessary explorations for location, is not taking it, the right remains in the owner as fully as before; no permanent injury can be sustained, nothing is taken from him, nothing is given to the company. When nothing further is done, it is competent for the legislature to give this authority, without any obligation to compensate for a damage which must be trivial; if the company commit any wanton acts, or do any unnecessary damage, they are trespassers, otherwise they have full power to locate the road, and the law is their justification. 20 Johns. 104, 740; 7 Johns. Ch. 342, 344. But when a claim is made for the permanent appropriation of private property for the use of the public, which requires the title of the owner to be vested in a corporation or state, the case is different. The proprietor is disseised, his right is extinguished, and his property is taken from him and given to another by the law; this creates the obligation to make compensation. There is also another obligation in this case upon the state, in the law authorizing the complainant to purchase and hold real estate. Both would be violated if compensation is not made, and the law would be void for impairing the obligation of a contract; or if not void, inoperative to pass the right of property, till a just compensation was made. It is not intended to lay down the broad proposition, that it is indispensable that the law should contain a provision for compensation, or prescribe the mode of making it. Though the law may be silent on this subject, yet if compensation is actually made in any way, or if the legislature should, by a subsequent law, direct it to be done, the law would be valid. But before this is done, the execution of any authority which the law might profess to give, to take possession of private property, would be enjoined; for the right of the owner to receive, and the duty of the legislature to provide for compensation is absolute, and the rights of property cannot be taken without an equivalent. By suspending the execution of the law by injunction, no permanent injury could be done to the proprietors, and no just complaint could be made by the legislature or the corporation, by withholding the enjoyment of the property for the objects of the law, till they had performed their duty. 20 Johns. 745. We are aware that the supreme court of New York have declared such a law to be void, as violating a great fundamental principle of government. Bradshaw v. Rodgers, Id. 105, 106. A different opinion is intimated by Chancellor Kent, in delivering the opinion of the court of errors in the same case. Id. 745. We should have felt much difficulty in forming an opinion on a point where there was such high judicial authority on both sides, had we not been aided by two analogous decisions of the supreme court of the United States. In Terrett v. Taylor, a perpetual injunction was decreed against parties claiming land under a law of Virginia, which did not constitutionally divest the title of the complainant. 9 Cranch [13 U. S.] 43, 55. In the Bank of Hamilton v. Dudley, they declared, that they would enjoin the execution of a judgment in ejectment, till the decree of the circuit court, on the report of commissioners appointed under the occupying claimant law of Ohio, for compensation to the defendant for his improvements, should be carried into effect. 2 Pet. [27 U. S.] 526. On this authority, we should have no hesitation in enjoining the execution of the law, if it provided no compensation, without declaring it void; this would do justice to the individual and without defeating the objects of the law. But in adopting this course, we should feel it our duty to go further than to enjoin, till the owner should have an opportunity of seeking and obtaining compensation according to the view of Chancellor Kent, in 20 Johns. 745; we would continue the injunction, till the company had made the compensation, without imposing on the owner any burthen of seeking or pursuing any remedy, or leaving him exposed to any risk or expense in obtaining it. The duty of the legislature is to provide for compensation, and of the company to make it, simultaneously with the disseisin of the owner, and the appropriation of his property to the purposes of the law.

As compensation is a necessary qualification to the exercise of any corporate authority over the property of individuals, it must be made previously to the divestiture of their right, and its final appropriation to the public use. 2 Johns. Ch. 166. We do not say that the sum due must in all cases be actually paid, before the company may proceed to execute the law by commencing the construction of the road. Though the fifth amendment of the constitution may not apply to, cases arising under the legislative powers of the state (20 Johns. 106), it may be taken as a correct definition of the rule of public law; there must be "just compensation" made to the owner. The public is considered as an individual treating with another for the exchange of property, or rather compelling the owner to alienate his property for a reasonable price. Vide 2 Co. Inst. 45; 1 Bl. Comm. 139; 2 Johns. Ch. 167. When the law makes provision for compensation, prescribes a mode of assessment, an obligation for its payment in a reasonable time, undoubted security and efficient means for its prompt collection, and the company comply with all the requisitions of the law, so that compensation is certain, we are not prepared to say, that it was not a substantial fulfilment of the duties of the

legislature and corporation, so far as to authorize them to commence their works, before the actual payment of the money. This case does not require us to define precisely, the extent to which the legislature may go in giving time for payment; some discretion may be used, depending on the circumstances of the case, of which a court of equity would judge, so as to secure to the owner a just indemnity, without unreasonable delay, or unnecessarily impeding the prosecution of great works of public improvement. In the present case, the law directs compensation to be made, and prescribes the mode of ascertaining it, when the right of the company attaches, and their obligation to compensate is incurred. At present it is not necessary to inquire further, than what are the requisitions of the law before the company have a right of possession, and whether they have on their part taken the steps incumbent on them to bring their power into action. By the eleventh section of the law, it is made a condition precedent to the entry for construction of the road, that its location be determined on, and a survey thereof be deposited in the office of the secretary of state. When that is done, the company may proceed to enter on the route, and carry the objects of the incorporation into full effect, by taking materials for the construction of the road and its appendant works; "subject to such compensation therefor as is hereinafter provided." The thirteenth section provides, that when no agreement can be made with the owner, a particular description of the land and materials required, shall be made out on oath, with the name of the owner and his residence, and given to a judge of the supreme court; who shall, after giving twenty days notice, appoint commissioners to appraise the land and materials, and to assess damages thereon; who shall make their report in ten days, and deposit it in the office of the clerk of the county. Such report, shall be plenary evidence of the right of the company to the land and materials, and of the owner to recover the amount awarded to him. which shall be a lien in the nature of a mortgage on all the property of the company. The fourteenth section gives to either party the right of making an application to the supreme court, to set the report aside, "provided. that such application shall not prevent the company from taking the land and materials on the filing the aforesaid report." As the eleventh section makes the right of the company subject to the compensation provided by the thirteenth, a compliance with the directions of the latter is clearly a condition precedent. Were the words of the law less explicit. the nature of the right asserted by the company, would make it our duty to hold them to a strict compliance with all the injunctions of the law, under which they claim to exercise a special, and a high authority. In the first place, to take possession of complainant's property, in the next to make an

absolute and permanent appropriation of it to their use, and in the third to divest all his right and transfer it to them by the operation of this law. The conditions on which the lawful exercise of this authority depends are plainly defined, they are to be performed by the company as the foundation of their right of entry. The law has not first given this right, and made compensation a condition subsequent; it has not left the owner to seek his remedy for property already appropriated and seized, but prescribed the terms on which alone it can be done, by making it the duty of the company so to proceed, that the same act which gives them a right to another's property, shall operate as a mortgage on all theirs, for the just compensation to which he is entitled. No provision is made for an application by the owner, the law makes him passive for the best of reasons; while his rights of property remain unimpaired, he has nothing to ask or complain of. It is not for him to apply for a right in the company to disseise him, and for compensation as the consequence; the company who want his property, must take legal process, or the due course of law to obtain it, their authority is special, limited, and conditional, and must be strictly followed. The law is made for their benefit, and it is their duty to take the previous steps incumbent on them, or they become trespassers. The principle is this, the company should not be interfered with, if they act within their authority, but that for the very reason that such large powers were given, the court will keep them within the limits of those powers. 2 Dow, P. C. 523. They must pursue the precise remedy given them by the law and are entitled to no other. 3 Mass. 307, 310. As it is admitted that these steps have not been taken, which are made indispensable to the right of the company to enter upon, or take possession of complainant's property; they have no right or power under the law to exercise any part of the authority given by the law, to take land or materials for the construction of the road. By their own neglect the law has been taken from under them, and they now stand before the court, as if their charter contained no provision for compensation, and can stand in no better, till they strictly comply with all the provisions of the thirteenth section. It would contradict the law and every principle of justice, to permit the complainant to be disseised, not only without due process of law, but in violation of that which has been prescribed for the benefit of the corporation, and to be turned over to seek his compensation as he may.

The only remaining question, is whether the complainant has made out a case for an injunction. He is the acknowledged owner of the land on which it is intended to construct the road; he has the perfect right to use, occupy and enjoy it as he has been accustomed to do according to his own pleasure; he may devote it to whatever purposes

he pleases, in which the law protects him equally with any other proprietor. His trees, waters, roads, parks, walks and pleasure grounds are his, by the same right as his mansion house, his grain fields or his meadows. 2 Johns. Ch. 378; 6 Johns. Ch. 439; 1 Ves. Sr. 183; 2 Brown, Ch. 88; 15 Ves. 13; 7 Johns. Ch. 732, 734; 16 Ves. 341; 5 Ves. 688; Dickens, 431. By not having complied with the provisions of the eleventh and thirteenth sections of their charter, the corporation, or any person acting by their authority, will be trespassers if they enter upon the complainant's premises without his consent, for any other purpose than locating the road; thus far his case is made out, and his right clear. The injury complained of as impending over his property is, its permanent occupation and appropriation to a continuing public use, which requires the divestiture of his whole right, its transfer to the company in full property, and his inheritance to be destroyed as effectively as if he had never been its proprietor. No damages can restore him to his former condition, its value to him is not money which money can replace, nor can there be any specific compensation or equivalent; his damages are not pecuniary (vide 7 Johns. Ch. 731), his objects in making his establishment were not profit, but repose, seclusion, and a resting place for himself and family. If these objects are about to be defeated, if his rights of property are about to be destroyed, without the authority of law; or if lawless danger impends over them by persons acting under colour of law, when the law gives them no power, or when it is abused, misapplied, exceeded, or not strictly pursued, and the act impending would subject the party committing it to damages in a court of law for a trespass, a court of equity will enjoin its commission. 7 Ves. 307; 2 Atk. 185; 1 Ves. Sr. 476; Dickens, 149, 164; 6 Johns. Ch. 51, 160; 7 Johns. Ch. 331; 3 Atk. 21; 2 Ves. Sr. 453; 6 Ves. 147; 6 Johns. Ch. 497; 15 Ves. 138; 16 Ves. 341; 17 Ves. 109, 128, 281; 18 Ves. 184. So of any act of peculiar trespass, irreparable, great, grievous mischief or lasting injury, destructive of property, a right or franchise (2 Johns. Ch. 474, 162; [Osborn v. Bank of U. S.] 9 Wheat. [22 U. S.] 840, &c.); taking land for a canal without authority, surveying and dividing a farm (2 Dow, P. C. 520); or the permanent appropriation of land (7 Johns. Ch. 336); which is a total destruction of the owner's right (6 Johns. Ch. 501); these are proper cases for injunction. But the danger must be imminent, not imaginary. On this point the answer admits, that the road has been laid off and staked out on complainant's land, in order to construct it; that this route is the only practicable and feasible one, unless at a greatly increased expense and distance; that the excavations have been begun at each end, and some intermediate points of the route; but it denies that they intend to proceed to the construction of the road, without the con-

sent of the proprietors, the filing the survey and making compensation, which the company are ready and willing to make. There is, however, no denial of the allegation in the bill, that the company have collected labourers, vehicles, implements, &c., at Bordentown, with the intention of commencing operations on complainant's land, on the contrary, it is in substance admitted by the answer, which avers that it is essentially necessary, to effect the great public objects of the road, to take the land on which it is located. As the complainant's allegation in this respect was supported by his affidavit, the answer ought to have denied it explicitly; this has not been done, and the court must take this part of the bill to be true. Nor does the answer aver that the company have taken, or intend to take any of the steps prescribed in the thirteenth section, previously to commencing their operations on the road; the general averment of their willingness to make compensation cannot avail them, it is no remedy to the complainant, or a compliance with the terms of the charter. From the whole tenor and purport of the answer, it is apparent that the company stand upon their right to effect the great and public objects of their incorporation, without any previous obligation to make compensation; under such circumstances we think the danger of a lasting permanent injury to the complainant, so imminent as to bring his case within the well established rules of courts of equity in granting injunctions. To entitle a party to this remedy, it is not necessary that there be any threat or declared intention to commit the act which will cause the injury; it is enough that preparatory acts are done, from which the inference is made of the defendant's intention, as if he employs a surveyor who marks trees, it is presumed to be done with the intention of cutting them down (Eden, Inj. 234; 7 Ves. 309; 5 Ves. 638; 8 Ves. 596); though the defendant denies it in his answer (Dickens, 101); so if he insists on his right to do the act (2 Atk. 184; Dickens, 670); or makes claim to land not his own, but the complainant's ([Terrett v. Taylor] 9 Cranch [13 U. S.] 43); mere apprehension, fear or belief is not enough, unless such facts appear as show them to be well founded, so as to satisfy the court that "the axe is laid at the foot of the tree," and that the act will be done without their interference; whenever that is done the injunction goes. 11 Ves. 53, 54; 2 Atk. 182, 183; [Osborn v. Bank of U. S.] 9 Wheat. [22 U. S.] 840. In this case there seems a moral certainty, that without this preventive process the complainant will be expelled from part of his property without lawful authority; an injunction will not injure any right vested in the defendants, or have any effect, if it is not intended to proceed to the construction of the road till all the conditions of the law are performed. That the complainant may recover damages at law, is no answer to the

application for an injunction against the permanent appropriation of his property for the road, under a claim of right; this is deemed an irreparable injury, for which the law can give no adequate remedy, or none equal to that which is given in equity, and is an acknowledged ground for its interference. Trespass is destruction, in the eye of equity, when there is no privity of estate, it prevents its repetition or continuance, protects the right, arrests the injury, and prevents the wrong; this is a more beneficial and complete remedy than the law can give, and therefore the proper one for a court of equity to administer. [Osborn v. Bank of U. S.] 9 Wheat. [22 U. S.] 842, 845; 1 Ves. Sr. 189; 2 Johns. Ch.. 473; [Lloyd v. Scott] 4 Pet. [29 U. S.] 215.

We therefore feel bound to enjoin any further proceedings, after the road is finally located and the survey deposited, until the filing the report of commissioners, pursuant to the thirteenth section of the charter.