NICHOLAS ROGERS and JOHN MAGEE, Plaintiffs in Error,

*against*

JOHN BRADSHAW, Defendant in Error.

ROGERS
v.
BRADSHAW.

IN ERROR to the Supreme Court. (*Vide*, S. C. *ante*, p. 103. 106.) *Bradshaw*, who was plaintiff in the Justice's Court, declared, for a trespass committed by *Rogers* and *Magee*, on his land, by entering thereon, and cutting and despoiling timber, growing and standing on the land, from the north part of the land southward to a certain distinguished white pine tree, situate and standing on the west side of the *Waterford* and *Whitehall* turnpike road, to his damage fifty dollars.

The defendants, in the Court below, admitted that they entered, &c. on the plaintiff's land, but denied the amount of damages, and the plaintiff's right to recover, and pleaded a justification, under the several acts relative to canals, and the amendments of, and additions to the said acts, from time to time made and passed.

The plaintiff, on the trial before the Justice, proved the cutting of the timber, and the value thereof, by *John B. Taylor*, who, on his cross-examination, said, that the ground on which the trespass was alleged to have been committed, was the same which the defendants were putting in the form of a turnpike road.

The defendants relied on the acts of the 17th of *April*, 1816, (sess. 39. ch. 237.) and the 15th of *April*, 1817, (sess. 40. ch.

*The acts of the 7th of April, 1816, (sess. 39. ch. 237.) and the 16th April, 1817, (sess. 40, ch. 262.) relative to canals, authorized the commissioners to enter upon and occupy, any lands which may be necessary for the canal improvements.*

*If, therefore, it becomes necessary for the prosecution of the canals, to occupy part of a turnpike road, the commissioners, or their agents for that purpose, may lawfully enter on the land of a person, for making a new road in the place of such part of the turnpike road discontinued by them, and taken for the purposes of the canal.*

The act of *April* 13, 1820, (sess. 43. ch. 102. s. 21.) which authorizes the commissioner to discontinue or alter any part of a *public road* or *highway*, when it interferes with a proper location or construction of the canal, applies to a *turnpike* road, it being, in the popular and ordinary sense, a *public road* or *highway*.

Though the party whose land is taken for the use of the public, is justly entitled to an adequate compensation, yet, it seems, that the commissioners, or their agents, are not liable as *trespassers*, for entering upon and occupying the land, before compensation has been made, though the act of 13th *April*, 1820, under which they acted, contains no provision for making compensation. And, especially, they are not liable in *trespass* to the party, when the act of *April*, 1817, providing a compensation for any injury to individuals, caused by taking their lands for the purposes of the canal, extends to cases arising under the act of 1820, as well as under the former acts.

IN ERROR.
........
ALBANY,
Feb. 1823.

ROGERS
v.
BRADSHAW.

262.) and the subsequent acts relative to canals; and undertook to show, that they were employed by the canal commissioners, or their agents, and by that authority entered upon the lands claimed by the plaintiff, and cut down, and otherwise removed, the growing timber and wood, in conformity with a contract which they had entered into with *Samuel Young*, as one of the canal commissioners; and that they had committed no trespass, and had done no act or thing which they were not authorized to do, and which was not necessary to be done, in conformity to the laws aforesaid.

It was proved, by the defendants, that they had entered into a contract with *Samuel Young*, one of the canal commissioners, to make a turnpike road, in lieu of part of the turnpike road which had been taken for the canal; that the same had been approved by the chief engineer; that the cutting of the timber complained of, was necessary to complete the said road; that the chief engineer had several times examined the ground, to ascertain the best route for the canal in passing the place of the alleged trespass; that the present route of the canal was approved and directed by the chief engineer; that the turnpike road was necessarily and unavoidably encroached upon by the canal course; that another road was indispensable in that place, and *was necessary to be made before the canal was commenced there;* that the land on which the trespass is alleged to have been committed, was necessary, if not the only course for the road, as the least expensive and the best for the accommodation of the public; that the ground, on which the defendants made the road, was staked out by the assistant engineer, by direction of the chief engineer; and that under the authority of the canal commissioners, the assistant engineer directed the defendants to work the road on the land on which the trespass was alleged to have been committed.

The Justice, having heard the proofs and allegations of the parties, and deliberated thereon, gave judgment for the defendants.

The plaintiff removed the cause, by *certiorari*, to the Supreme Court, and in *May term* last, the judgment rendered by the Justice, was reversed by that Court.

*S. Young,* and *H. Bleecker,* for the plaintiffs in error.

*A. Van Vechten,* for the defendant in error.

THE CHANCELLOR. This case came before the Supreme Court upon *certiorari,* founded on a Justice's judgment.

It appeared by the return of the Justice, that *Bradshaw* sued *Rogers* and *Magee,* in trespass, for entering, in *June,* 1821, upon his land, and cutting down timber. They justified under the several acts relative to the canals. It was shown in proof, that the route of the northern canal, at the place in question, was directed by the chief engineer ; that the turnpike road adjoining the place where the trespass was alleged to have been committed, was unavoidably encroached on by the tract or course of the canal, and that another road was indispensable at that place, and must have been made before the canal was commenced ; that the land on which the entry was made, was a necessary, if not the only course for the road, and was the least expensive, and best for the accommodation of the public ; the chief engineer approved of the road as staked out, and it was staked out by his direction, and was in length about forty-two rods, and in width four rods ; and the two defendants, under the authority of the canal commissioners, and in pursuance of a contract with one of them, were putting the ground in the form of a turnpike, when the action of trespass was brought. The timber and wood cut down were supposed to have been worth from 20 to 40 dollars. Upon these facts, the Justice held the justification valid, and gave judgment for the defendants.

The Supreme Court reversed the judgment of the Justice ; and in the opinion, delivered by the Chief Justice in behalf of the Court, it was stated, that the land of *Bradshaw* was not entered upon for the prosecution of canal improvements, but was taken as a substitute for part of the turnpike road, which had been broken up and taken for the canal, and therefore the case did not come within the powers given to the canal commissioners by the act of 1817. It was further stated, that the case did not come within the powers granted by the act of 1820, because, a turnpike was not a public road or highway, within the meaning of the act,

IN ERROR.
........
ALBANY,
Feb. 1823.

ROGERS
v.
BRADSHAW.

and because, the act contained no provision for compensation to the owner of the land so taken.

We must carefully examine the provisions of those two acts, in order to see whether the Supreme Court were, or were not, mistaken, in their construction of the powers conferred upon the canal commissioners.

The act of 1816, (sess. 39. ch. 237.) had made it the duty of the commissioners to cause those parts of the territory of the state, which might be upon or *contiguous* to the probable courses and ranges of the canal, to be explored and examined, for the purpose of fixing the most eligible routes ; and they were to cause all necessary *surveys and levels to be taken,* and to adopt and cause to be executed proper *plans,* for the construction and formation of the canals.

This act was the commencement of that great undertaking, which, in the language of one of our statutes, was " to advance the prosperity and elevate the character of the *United States.*" It began by sketching out the duty of the commissioners upon a liberal scale, and with just confidence in their discretion. They were to explore and examine lands, and to cause surveys and levels to be taken. Nothing was said about impediments to be thrown in their way by trespasses upon private right, or that they were to make the course of the canal bend to the interest, or the unreasonableness of individuals. If private rights of every description were not to give way upon such an occasion, to the permanent interest of the public, upon fair and reasonable compensation, it would have been difficult even to explore and examine, and make surveys and levels; and it would have been quite idle to think of adopting and acting upon any plan, suitable to the boldness of the design, and adapted to the success of its execution.

Next came the act of 1817, (sess. 40. ch. 262.) continuing the powers conferred upon the commissioners by the former act, and increasing them largely. It was declared to be lawful for the canal commissioners, and each of them, by themselves and agents, to enter upon and use, all and singular, any lands, waters, and streams, necessary for the prosecution of the improvements intended by the act, and to make all such canals, locks, dams, and other works and

devices, as they might think proper, for making said im-
provements; doing, nevertheless, no unnecessary damage.

Here the question occurs, were not the commissioners au-
thorized, by this act, to enter upon the land of the defend-
ant in error, and to use it to the extent and in the manner
stated in the record.    The Supreme Court have answered
the question in the negative, because, they say, the entry
was not for the prosecution of the canal improvements, but
to make a substitute for part of the turnpike road, which
was broken up and taken for the canal.    But, if the turn-
pike road was *unavoidably encroached* on by the canal, and
*another road was indispensable* at that place, before the canal
was commenced, and the land taken was *necessary* for the
road, (and all this was proved in the cause,) it would seem
to follow, as a clear logical deduction, that the land taken
was necessary for the prosecution of the improvements in-
tended by the act.    It is very certain, according to the testi-
mony, that the improvement of the canal, at the place spe-
cified, could not be prosecuted without the road; and, if so,
the road was necessary for the improvement.    Besides, the com-
missioners were made the judges as to what lands were ne-
cessary for the prosecution of the improvements; and if they
had even erred in judgment, as to the extent, or the greater
or less degree of that necessity, they could not be responsi-
ble as trespassers, unless they had acted in bad faith, or with
such egregious indiscretion, as to amount to it.    In this
case, however, there is no colour of pretence for any such
suggestion.    It was shown upon the trial, before the Justice,
that the land taken, was almost the only course for the road,
and was the least expensive, and best for the accommo-
dation of the public.    Here was, then, the exercise of a
sound discretion, in the execution of the trust; and we per-
ceive, by the facts, that the road was through woods, or un-
improved lands, for 42 rods only, and that all the wood cut
down, was not worth more than from 20 dollars to 40 dollars.
I cannot perceive any just ground, in this case, for a charge
against the commissioners, either of abuse or of misapplica-
tion of power.    Upon the very straitened construction set
up, on the part of the defendant in error, it might truly be
said, that if the course of the canal met a house, or barn,

IN ERROR.
∘∘∘∘∘∘∘
ALBANY,
Feb. 1823.

ROGERS
v.
BRADSHAW.

IN ERROR.

ALBANY,
Feb. 1823.

ROGERS
v.
BRADSHAW.

or barrack, or shed, standing in its way, it could not be re-moved to the right hand or to the left, and placed upon the adjoining land of the same owner, without committing a trespass upon that land. It might just as well be said, in such a case, as it has been said in this, that the new ground taken for the occupation of the building, was *not taken for any purpose immediately connected with the canal, but as a substitute for the site of a house or barn, which was broken up and taken for the canal.* Surely, a statute, vesting large powers, resting very much for their exercise in undefined discretion, and checked only by the gentle admonition of doing "no unnecessary damage," ought to be construed more benignly and more liberally. Especially ought this to be the case, when the powers are to be applied to a great public object, calculated to intimidate by its novelty, its expense, and its magnitude, and which depended for its successful results, upon decision of character, as well as upon maturity of judgment.

The act, also, says, that the commissioners were to make all such canals, locks, dams, *and other works and devices,* as they might think *proper,* for making such improvements. This was likewise a grant of very extensive power. The act could not readily have used words of more general and unfettered import. *The works and devices* were not explained or enumerated. They were only to be *proper* for making the improvements, and were to cause no *unnecessary* damage to private rights; what was proper to be done, and what damages were unavoidable, were questions left entirely to the judgment of the commissioners. They required but two qualifications in the application of this power, in order to exempt them from the charge and the penalties of trespass. They were to act with good faith, and with sound common sense, and then it was impossible for them to be guilty. We must take expressions in the most extensive sense, when it is probable the law-giver had in view every thing pointed out by that extensive sense, and when we give to the expressions the sense most suitable to the subject, and best adapted to the facility and success of a great and generous scheme of public policy. Every interpretation which leads to an absurdity, or to embarrass or defeat the purposes

of the statute, is to be avoided. If the commissioners, under the act of 1817, had no power to make a substituted road, on the neighbouring ground, in place of that part of the turnpike they had broken up, what was to be done? They could not go on with their work, nor could the public travel without a road. The line of the canal must have been either diverted from its course, and, perhaps, with great and lasting public inconvenience, to avoid touching the turnpike, or else the progress of the canal must have been suspended, until an opportunity was given for an application to the legislature for new powers. I should doubt, whether any construction would be a just one, that leads to such inconvenience or absurdity.

IN ERROR.
........
ALBANY,
Feb. 1823.
ROGERS
v.
BRADSHAW.

The next part of the act of 1817, provides compensation for any injury produced to any individual, by the exercise of this power. It declares, that if lands, waters, or streams, taken and appropriated for any of the purposes aforesaid, shall not be given, it shall be the duty of the commissioners to cause the damages to be estimated, in the mode prescribed, and paid. The compensation, in this case, is for damages for lands taken *for any of the purposes aforesaid,* and the remedy is co-extensive with the injury. Whatever lands may be appropriated, under the powers, those lands are to be paid for, if the party refuses to give or grant them. The land, over which the turnpike road led, before it was broken up by the canal, we are to presume had been paid for under the act of 1806, establishing the *Waterford* and *Whitehall* turnpike road; and the title to that land was in the company, and was to go to the state when the corporate company should be dissolved. Under the act of 1817, it was, also, provided, that where lands were taken, as being necessary for the prosecution of the improvements, the fee should vest in the state, on being paid for. But, I apprehend, that the state, in this case, would hold the fee subject to the easement, or right of the turnpike corporation, to use the 42 rods of newly made road, according to their charter. I should have no doubt, that in such case, if the state should pay *Bradshaw* for these 42 rods, that they would hold the fee in trust for the turnpike corporation, to the extent of their corporate right in

IN ERROR.

ALBANY,
Feb. 1823.

ROGERS
v.
BRADSHAW.

the road, and thus, every conflicting interest, under a just and fair operation of the act of 1817, would be made to harmonize, and be satisfactorily adjusted.

According to my view, then, of the case, the Supreme Court were mistaken when they held, that the act of 1817 did not apply to the case, on the ground, that the land of the defendant in error had not been entered upon for the prosecution of the canal improvements. I apprehend, they were equally in an error when they held, that under the subsequent act of 1820, the proceedings were indefensible.

By the act of 1820, (sess. 43. ch. 202.) it was declared, "that in all cases in which it should be deemed necessary by the principal engineer, in laying out the line of the canals, or any work connected therewith, to discontinue or alter any part of a public road or highway, on account of its interfering with a proper location or construction of either of the canals, the engineer shall be authorized to make such discontinuance or alteration, provided that the canal commissioners, before they obstruct the passage on any part of a highway now legally established, shall open, and reasonably work, in order to render it passable, such part of the said highway as may be new laid by the engineer."

In the opinion of the Supreme Court, this provision does not apply to a turnpike road, because it is private property, and not a public road or highway, within the meaning of the act. Here, I think, also, the construction is too limited for the object, and the subject matter of the provision. A turnpike is a public road or highway, in the popular and ordinary sense of the words, and in that sense the legislature are to be presumed to have employed them. Turnpike roads are, in point of fact, the most public roads or highways that are known to exist, and, in point of law, they are made entirely for public use, and the community have a deep interest in their construction and preservation. They are under legislative regulations, and the gates are subject to be thrown open, and the company indicted and fined, if the road is not made and kept easy and safe for the public use. In the act incorporating the *Waterford and Whitehall Turnpike Company*, a numerous description of

persons are entitled to use the road, at all times, free of toll; and all sleds and sleighs, and the horses and cattle drawing them, are exempted from toll. If the land over which the road is conducted, be owned by the company, that does not make it less a public road. If a highway be laid out according to law, the fee, or right of soil, may, and often does, remain in the original owner, and the public have only a right of way. It is a general rule of the common law, that the right of soil in a public highway belongs to the owner of the adjoining ground, subject to the right of passage in the public, and he may maintain trespass for any exclusive appropriation of the soil. (*Cortelyou* v. *Van Brundt*, 2 *Johns. Rep.* 357.) There is nothing, therefore, in a turnpike road, that should exempt it from coming under the description of a public road or highway; and, because, the engineer is to draw up and file a description of the part of the road discontinued and laid anew in the town clerk's office, that circumstance does not seem sufficient to control the construction. There is no repugnancy in the law in applying that act even to a turnpike road. It is, at least, a very harmless proceeding, and it may, on many occasions, be important to the public, that there should be this documentary evidence, in the town clerk's office, of the change of the tract of the turnpike road.

An objection was here taken by the defendant in error, which ought to be answered. It does not appear that the principal engineer had actually drawn up in writing a description of the road discontinued and new laid, and filed the same in the town clerk's office. This is a technical objection, rather to the form, than to the substance of the transaction; for we have the fact, that the route of the canal over the turnpike road, and the discontinuance of that road, at that place, and the location of the new road along the side of the other, were all actually done by the chief engineer. It would be rather too rigorous a construction to hold, that the omission to draw and file the description, rendered the first entry a trespass. The more reasonable interpretation is, that the new road cannot be considered as the legally established public road until that be done; but this does not affect the question of the entry of the commissioners, in

IN ERROR.

·······

ALBANY,
Feb. 1823.

ROGERS
v.
BRADSHAW.

the first instance, to lay out and make the road.  This is a preliminary act, which, I apprehend, may be safely done, without involving the commissioners in the charge of trespass.

But the Court below consider the absence of any provision in the act of 1820, for compensation to the owner of the land, for damages sustained by such an alteration of the road, as a still more serious difficulty in the application of the statute to the case.  It appears to me to be a sufficient answer to this objection, that the act of 1817 had provided the remedy for compensation for every injury committed by the commissioners in the execution of their powers ; and when new powers are added, (though, I apprehend, the act of 1820 did not, on this point, confer any power not before existing,) the same remedy would apply.  All statutes, said Lord *Mansfield*, (*Doug*. 30.) which are *in pari materia*, are to be taken together, as if they were one law ; and, in many instances, a remedy provided by one statute, will be extended to cases arising on the same subject matter under a subsequent statute.  The act of 1820 was only a specification of the course of duty of the commissioners in a particular case ; and it would have been quite unnecessary, and, in my humble opinion, quite idle, to have provided, that the general remedy for all damages occasioned by the exercise of any part of the whole mass of undefined power given by the act of 1817, should apply to a portion of that power exerted in the particular manner provided for by the act of 1820.

If the remedy given in 1817 did not extend to lands appropriated under the powers mentioned in the latter act; yet I should doubt exceedingly, whether the general principle, that private property is not to be taken for public uses without just compensation, is to be carried so far as to make a public officer who enters upon private property by virtue of legislative authority, specially given for a public purpose, *a trespasser*, if he enters before the property has been paid for.  I do not know, nor do I find, that the precedents will justify any Court of justice in carrying the general principle to such an extent.  The Supreme Court, in one part of their opinion, admit, that the canal commis-

sioners have a right to enter upon, and occupy lands, necessary to effectuate the objects of their appointment, without having first paid the loss and damage the proprietor of lands may sustain. This equitable and constitutional title to compensation, undoubtedly, imposes it as an absolute duty upon the legislature to make provision for compensation, whenever they authorize an interference with private right. Perhaps, in certain cases, the exercise of the power might be judicially restrained, until an opportunity was given to the party injured to seek and obtain the compensation. But it would deserve a very grave consideration, before we undertook to lay down the broad proposition, that notwithstanding a statute clearly and expressly directed the assumption of private property for a necessary public object, it would still be a nullity, and the officer who undertook to execute it a trespasser, if a provision for compensation did not constitute part and parcel of the act itself. However, it is not necessary to give any opinion on this point, for, as I have already observed, the provision for compensation, in the act of 1817, extended to cases arising under the act of 1820.

I am, accordingly, of opinion, that whether the justification of the commissioners be referred to the act of 1817, or of 1820, it is equally valid and effectual, and that the judgment of the Supreme Court is, consequently, erroneous, and ought to be reversed.

This being the unanimous opinion of the Court, it was, thereupon, ORDERED, ADJUDGED, and DECREED, that the judgment of the Supreme Court be reversed, &c., and that the record be remitted, &c.

Judgment of reversal.