Polly v. Saratoga and Washington Railroad Co.

------- •-•-• -------

SAME TERM.    *Willard, Hand, and Cady*, Justices.

POLLY *vs.* THE SARATOGA AND WASHINGTON RAILROAD
COMPANY.(*a*)

A law which authorizes an entry upon a person's land, for the purpose of making the preliminary or final surveys for a railroad, before compensation is made, is not unconstitutional, if the act makes suitable provision for compensation in case the land shall subsequently be taken for such railroad.

(*a*) PAIGE, J., being a stockholder in the railroad company, did not sit, in this cause.

VOL. IX.          57

Polly *v.* Saratoga and Washington Railroad Co.

In an action of trespass, against a railroad company, for breaking and entering the plaintiff's close, where the defendants justify under and by virtue of their charter, on the ground that the land in question was necessary for the construction of their railroad, and that the defendants, by their agents, surveyors and engineers, entered for the purpose of making surveys, &c. an averment in the plea, that there was a disagreement between the plaintiff and the defendants as to the price of the land, and that while such disagreement existed, J. McL., first judge, " on the petition of the defendants, in writing, duly issued and delivered his warrant," &c. is a sufficient averment of the presenting of a petition.

Where the charter of a railroad company directed that in case of a disagreement between the company and the owner of any land taken for the construction of the road, as to the value of the land, upon the presenting of a petition to a judge, the latter should direct the sheriff to give public notice in at least one newspaper printed in the county, that on a specified day he would, together with the county clerk, at the clerk's office, proceed to draw a jury, to appraise the damages of the owner of the land; *Held*, that this was all the notice of the drawing of the jury which the owner was entitled to; and that written notice was not necessary to be served on him.

It is not necessary, in a plea, to set out the names and places of abode of the twelve jurors drawn for the purpose of appraising the value of land, taken for a railroad. It is sufficient to mention the names of those who were actually sworn.

Where the proceedings for the appraisal of the value of land thus taken, were commenced before the first judge of a court of common pleas, whose office was then abrogated by a change of the organic law, and a county judge was elected in his place, under the new constitution; *Held*, that such proceedings might be continued, and completed, before such county judge.

Where the charter of a railroad company provided that in case of a disagreement between the company and the owner of any land taken for the construction of the road, as to the value of the land, twelve persons should be summoned, six of whom should be drawn to form a jury for the appraisal of the value of such land; *Held*, that it was sufficient if the sheriff summoned all of the twelve who were in life, and within his jurisdiction, and six could be taken by lot from that number, free from exceptions. And that a return, by the sheriff, as to one of the number, that he was a non-resident of the county, was a sufficient excuse for not summoning him.

The judge before whom proceedings of this nature are prosecuted, has the power to continue the same by adjournment from day to day, although such power is not expressly given, by the charter of the company.

In trespass *quare clausum fregit*, against a railroad company, a plea justifying the entry, on the ground that the land was necessary for the construction of the road, and setting out the proceedings for the appraisement of the plaintiff's damages, can not be demurred to for *surplusage*, because it men-

Polly *v.* Saratoga and Washington Railroad Co.

tions the claims of other land owners, for damages, with which the plaintiff has no concern.

In such a case the maxim *utile per inutile non vitiatur* applies.

Where proceedings for the appraisal of damages, commenced before the first judge of a court of common pleas, were directed by him to be transferred to the county judge, on one day's notice being given to the owner of the land, and the landowner subsequently appeared before the county judge without raising the objection that he had not had notice of the transfer; *Held*, that such notice being for his benefit, such appearance by him was a waiver of it, or an admission that notice had been regularly served.

THIS was an action of trespass, brought by the plaintiff against the defendants for breaking and entering two certain closes, belonging to him, in Whitehall, and which were described by metes and bounds, and treading down the grass, digging great quantities of earth and stone, and building embankments, &c. The declaration contained seven counts, in which the injury was variously stated. No question was raised as to the sufficiency of the declaration as a pleading. The action was commenced prior to the code of 1848, and the pleadings were according to the former practice.

The defendants, among other pleas, pleaded specially to the whole declaration, as to the breaking and entering the said closes therein mentioned, and as to all the supposed trespasses therein alledged to have been committed by the said defendants, *actio non,* &c. setting out their act of incorporation of May 2, 1834, and the ninth section at full length, alledging that they commenced the construction of their road within the time limited by the second section, to wit, on the first of January, 1835; that by the act of April 13th, 1840, the time in which to complete the road was extended to the first of July, 1845; and by the act of May 4, 1844, it was further extended, to six years from the passing of the act last mentioned.

The plea then alledged that the two closes, &c. in which, &c. were at the said several times when, &c. and still were necessary for the construction and maintenance of the said railroad, &c. for the accommodation requisite and appertaining thereto, and that the defendants at the said several times when &c. *by their agents, surveyors and engineers, entered in and upon said*

*closes, &c. for the purpose of causing further examination and surveys to be made for the most advantageous line, course or way whereon to construct* their said road, and for the purpose of taking possession of and using so much of the same as might be necessary for the construction and maintenance of the said road and the accommodation requisite and appertaining thereto, and did then and there, &c. cause such further examination and surveys to be made, and on so much of the said closes as was necessary for the purpose aforesaid. And also, on the first of January, 1847, by J. B. S., then and there being the defendants' engineer, caused a final survey to be made of the most advantageous route of their said road, including so much of said closes as was necessary, &c. and setting out the closes taken by the defendants, by metes and bounds.

The plea then alledged that on the first of April, 1847, they were unable to agree with the plaintiff as to the price of said lands, and also unable to agree with divers other persons whose lands were also taken, giving their names; all which lands were necessary for the construction and maintenance of said road, and while such disagreement existed, and before making any portion of said railroad in and upon any of the said lands concerning which such disagreement existed, and on or about the twentieth of April, 1847, at Salem, in the county of Washington, John McLean, Esq. then and there being first judge of the court of common pleas, in and for the county of Washington, on the petition of the said defendants in writing, duly issued and delivered his warrant to the sheriff of said county, directing him to give public notice in at least one newspaper printed in said county of Washington, that at some future day, not less than thirty days from the first publication of such notice, the clerk of the said county and the said judge would proceed to draw in the same manner as jurors were then drawn in courts of record, at the said clerk's office in said county, the names of twelve persons to serve as a jury in assessing said lands so as aforesaid, situate, &c. &c. with the owners of which a disagreement as to price so existed, as aforesaid, and the damages the said owners thereof should individually sustain by reason of the appropriation of

Polly *v.* Saratoga and Washington Railroad Co.

said land to the use of the said defendants, and the said judge did thereupon appoint the 24th day of May, then next, at ten o'clock, A. M. at the clerk's office, as the time and place of drawing such jury; in pursuance of which D. T. P. Esq. sheriff, &c. caused such notice to be published for more than thirty days in the newspaper printed in said county called the W. C. P. and therein appointed the said 24th of May, then next, at ten o'clock A. M. at the clerk's office, as the time and place of drawing such jury; at which time and place the said judge, sheriff, and Henry Shepherd, county clerk, attended, and in the presence of each other the said clerk then and there publicly drew in the same manner as the names of persons were (then) required to be drawn for jurors in courts of record, the names of twelve persons to serve as such jurors as aforesaid, to whom no objections were then and there made, and who were not residents of any town through which the said railroad then passed, and who were not of kin to any person claiming damages or interested in said road, nor of kin to any persons who were so interested or who claimed such damages. The plea then described the manner particularly in which the clerk drew the twelve names, " none of which persons were dead or insane, or permanently removed from said county, to the knowledge or belief of any person so attending such drawing as aforesaid." The minute of the drawing was signed, &c. and delivered to the sheriff. The plea then stated that on the first Monday of July, 1847, the office of Judge Mc-Lean, as first judge of the common pleas, expired, and Martin Lee, Esq. was elected county judge of said county, and took the oath of office, whereupon Judge McLean, in pursuance of law, made an order in writing, under his hand, bearing date July 5th, 1847, transferring the proceedings, &c. to Martin Lee, on giving to said owners interested in such appraisement one day's notice of that order. The order was set out in *hæc verba.*

That such proceedings were thereupon had by virtue of said order, that the said proceedings became transferred to and vested in the said Martin Lee, county judge, and he was thereafter authorized to conduct the said proceedings. That the said Martin Lee afterwards, on the 15th of July, 1847, appointed and

Polly v. Saratoga and Washington Railroad Co.

directed by his warrant, the said sheriff to summon the said twelve persons whose names had been so drawn, &c. and contained in said list so delivered to him, &c. to appear at Washburn's Hotel, in Fort Edward, on the tenth of August, then next, at 11 o'clock A. M. before the said Martin Lee, as such judge, as aforesaid. At which time and place, before said judge, the said sheriff appeared and returned the said warrant, and eleven of the said jurors whose names had been so drawn as aforesaid and who had been duly summoned, &c. appeared; and the said sheriff returned that one of the said jurors, so drawn, was then and ever since had been a non-resident, and could not be summoned. Whereupon the said judge on the said tenth of August, 1847, in the presence of the defendant and W. F. B., E. B., and M. M., to whom fourteen days' notice of such hearing had been given, publicly drew by lot from the names of such jurors six, who were duly qualified and free from all exception, and who were then and there duly empannelled, and sworn well and truly to appraise the lands of certain owners of lands situate along and adjoining the line of said railroad of said company, as then located in the county of Washington, with whom a disagreement as to the price of such lands existed, and the damages the said owners should sustain by reason of the appropriation of said lands to the use of the said company, and a true verdict give therein according to evidence. That afterwards such proceedings were had, that the proceedings were duly continued by adjournment by Judge Lee to the 22d of September thereafter, at Bordwell's hotel near Comstock's landing in Fort Ann, of which time and place of hearing and of said order of the said John McLean, so transferring said proceedings, notice of more than fourteen days was duly given to the plaintiff by the defendants. And in pursuance of such notice, at the day and place aforesaid the plaintiff and defendants appeared, before the said judge, and the six jurors who had been so empannelled and sworn as aforesaid, to wit, (giving their names,) also appeared and were then and there sworn well and truly to appraise the lands of the said Jonathan Polly situate along and adjoining the line of the railroad of said company as then located in the town of Whitehall,

in the county of Washington, and the damages the said Jonathan Polly should sustain by reason of the appropriation of said lands to the use of the said company, and a true verdict give according to evidence. And the same jurors having heard the proofs and allegations of the parties which were delivered in open court, in the presence of the parties, then and there, to wit on the 23d of September, 1847, to which day the proceedings were duly continued, brought in and delivered to the said court their verdict in writing, by which they appraised the land then and there submitted to them for appraisement at five hundred dollars, which was duly certified by the said judge, and about the 1st October, 1847, filed in the clerk's office of the county of Washington. That within thirty days thereafter the defendants exhibited due proof to the said judge that they had deposited the said sum of $500 to the credit of the said plaintiff in the Whitehall Bank, being then and there an incorporated moneyed institution, and being the place directed by the said judge as the place of such deposit, and that the defendants had paid all the expenses of said appraisement; and thereupon the said judge, on the 16th of October, 1847, made an order or decree in writing, particularly describing the lands of the said plaintiff so appraised as aforesaid, and reciting the said appraisement of damages, and the manner of making it, and all the facts necessary to a compliance with the said 9th section of the defendants' charter, which decree was in the following words, (setting it out *in hæc verba,*) which decree was on the 16th of October, 1847, duly recorded in the clerk's office of Washington county, and the same remains unreversed and in full force.

The defendants, by their plea averred, that the several closes mentioned in the declaration were the same mentioned in the survey of the defendants' engineer and in the said verdict and appraisal, and they alledged that the title had become vested in them, &c. Wherefore, &c.

The plaintiff demurred to the plea, and assigned 26 causes of demurrer, under most of which distinct causes of demurrer were pointed out, exceeding a hundred in number. The defendants

Polly *v.* Saratoga and Washington Railroad Co.

joined in demurrer. The causes of demurrer are noticed in the opinion of the court.

*J. Gibson,* for the plaintiff. I. The justification set up in the plea is insufficient *in form.* (3 *John. Cas.* 107. 1 *Hill,* 324. *Bac. Abr. tit. Statute,* § 10. 3 *John.* 438. 4 *Id.* 306. 8 *Id.* 43. 1 *Cowen,* 316. 3 *Paige,* 338. 10 *John.* 161. 2 *Hall's N. Y. Rep.* 192, 193, 231. 5 *Paige,* 26, 27. 1 *Chit. Pl.* 240, 241, 520. 17 *Wend.* 198. 16 *Id.* 37. 1 *Hill,* 597. 4 *Denio,* 86. 1 *Id.* 568. 19 *John.* 7. 20 *Id.* 343. 1 *Wend.* 90. 2 *R. S.* 412, § 20. 4 *Hill,* 86. 1 *Comst.* 452. 24 *Wend.* 288. 6 *Hill,* 576. 5 *Id.* 327. 1 *Saund.* (*Wms.*) 298, *n.* 1. *Gould's Pl.* 111, 88, 2d ed. 14 *East,* 291. 1 *Denio,* 592, 332. 3 *Wend.* 328. 7 *John.* 96. 3 *Barb. S. C. Rep.* 575. 15 *John.* 141. *Cowen & Hill's Notes,* 998. 5 *Wend.* 156. 4 *Black. Com.* 283. 1 *Comst.* 505. 24 *Wend.* 288.) II. The justification stated in the plea is defective *in substance.* (18 *Wend.* 29. 6 *Id.* 566, 7. 1 *Cowen,* 316. 6 *Id.* 221. 1 *Wend.* 228. 1 *Denio,* 892. 1 *Comst.* 79. 4 *Hill,* 98. 1 *East,* 64. 1 *Conn. Rep.* 46. *Plowd. Com.* 206. 1 *Kent's Com.* 466, 3d ed. n. d. 6 *John.* 101, 103. 1 *Hill,* 141. 20 *Wend.* 249. 4 *Hill,* 76, 86, 92. 6 *Wheat.* 119. 7 *Wend.* 148. 4 *Denio,* 581. 6 *Hill,* 579. 8 *Wend.* 47, 60. 25 *Id.* 172. 2 *Cowen,* 419. 4 *Hill,* 84. *Sess. L. of* 1847, 343, § 76. 8 *Cowen,* 16. 5 *Hill,* 428. 6 *Car. & Payne,* 337. 2 *Wend.* 377. 17 *Id.* 40, 41. 9 *John.* 291. 1 *Hill,* 71. 2 *Id.* 475. 1 *Denio,* 332.) III. The defendants had no right to break and enter the plaintiff's closes and commit the several trespasses charged in the declaration. (*Halliday* v. *Noble,* 1 *Barb. S. C. R.* 153; *S. C. in error,* 1 *Comst.* 330. *Gould's Pl.* 359, *ch.* 6, *pt.* 11, § 99. 1 *Hill,* 130. 1 *Barb. S. C. Rep.* 286, 290, 291. 18 *Wend.* 33. *New Const. art.* 1, §§ 7, 14, 15, 17; *art.* 14, § 5; *art.* 7, § 25. 2 *R. S.* 208. 2 *Cranch,* 33. 1 *Brocken.* 162. *Matter of Carpenter, Code Rep. Oct.* No. 1849, *p.* 37. 4 *Hill,* 384. 6 *Cowen,* 642. 9 *Id.* 640. 2 *Wend.* 266. 11 *Id.* 132, 511. 9 *Cowen,* 664. 5 *Id.* 346. 19 *John.* 58. 3 *Tenn. Rep.* 442. *Smith's Com. on Const. and Stat. Law,* 654.) It is therefore insisted, by the

Polly *v.* Saratoga and Washington Railroad Co.

plaintiff, that the plea is informal in matter and defective in substance; and even if good in form and substance, still it appears affirmatively that the trespasses charged have not been justified; and the plaintiff should have judgment on the demurrer.

*W. L. F. Warren,* for the defendants.   I. In pleading, it is only necessary to state facts conferring jurisdiction on the officer, and then to aver that such proceedings were had that judgment was given, &c.   (*Graham's Pr.* 241.   6 *Cowen,* 221.) II. After jurisdiction is acquired, any irregularity in the subsequent proceedings is cured by the omission of the party to object.   (3 *John. Cas.* 107.   10 *Wend.* 174.)   III. The plea states all the facts necessary to confer jurisdiction, viz. (1.) That the land was necessary.   (2.) That there was a disagreement as to price.   (3.) That application was made by petition, &c.   IV. The plea sets forth the decree, which is a sufficient justification, and the court will give it effect according to the following rules. (1.) It is evidence of all the facts recited in it; even of jurisdictional facts.   (*Cowen & Hill's Notes,* 1014, 15, 16.   12 *Wend.* 102.)   (2.) It being made by direction of the statute, (*Laws of* 1834, *p.* 437, § 9,) it is evidence of those facts, which are considered *res judicata.*   (*Cowen & Hill's Notes,* 1016, 1019.)   (3.) It being an adjudication between the parties, on the same subject matter, it is conclusive.   (*Id.* 804 *to* 810, 988.)   V. The plea avers, and the decree recites, all the requisite jurisdictional facts, and contains a good defense.   And all other averments which are immaterial, the court will disregard on special demurrer, though informally pleaded.   (1 *Denio,* 427.   3 *Caines,* 89.   4 *Hill,* 157.)

WILLARD, J.   The first objection to the plea is, that it does not justify the entry of the defendants' engineers and servants to make the preliminary examinations and surveys.   The plea does not alledge that any compensation for such entry had been paid or tendered to the plaintiff before such entry, nor was such payment required by the act incorporating the defendants.   The 9th section of the act (*Laws of* 1834, *p.* 440) contemplates, that

Polly *v.* Saratoga and Washington Railroad Co.

the defendants, by their agents, surveyors and engineers, may enter upon, take possession of, and use all such lands and real estate as may be necessary for the construction and maintenance of their said road, but before *making any portion of said road on said land,* if they can not agree with the owner as to the price of the land, they must pursue the measures prescribed by that section, to appraise the damages, and deposit the sum at which it shall be assessed, to the credit of the owner, in such bank as shall be designated in pursuance thereof. The question raised is whether a law which authorizes an entry upon another man's land, for the purpose of making the preliminary or final surveys for a railroad, before compensation is made, is constitutional, when the act makes suitable provision for compensation in case the land is subsequently taken therefor. This question has been repeatedly settled by the highest courts of the state, in favor of the constitutionality of the act. It was directly involved in the leading case of *Rogers* v. *Bradshaw,* (20 *John.* 735, 744,) and the right to enter for such purpose was upheld by the unanimous opinion of the court of errors. The same doctrine was repeated with approbation by Walworth, Ch., in *Bloodgood* v. *The Mohawk and Hudson Railroad,* (18 *Wend.* 17.) Unless the legislature possess power to authorize an entry for this purpose, the clause of the constitution which by implication permits private property to be taken for public use, upon making just compensation, (*Const. of* 1821, *art.* 7, § 7,) would be nugatory. The constitution does not prohibit the legislature from permitting an entry to be made upon the property of an individual for the purpose of a preliminary examination. The prohibition relates only to the *taking it for public use* without just compensation. This clause was not contained in the constitution of 1777, but was borrowed from the fifth article of the amendments of the United States constitution. But the constitutional prohibition was merely declaratory of the existing law. In this state, before the adoption of the United States constitution, a road, public or private, was not allowed to be laid out through the improved lands of another without a suitable provision for the payment of damages. (7*th Session, ch.* 72, §§ 2, 3. 1 *Greenl,*

*Laws,* 105, *act of 4th May,* 1784.) The plea affords a justification for the entry by the defendants' surveyors and engineers to make the requisite surveys, preparatory to taking the land for the use of the railroad.

Many of the objections to the plea are founded in a misapprehension of the facts, and many are frivolous. There are some, however, which require to be noticed.

It is objected by the plaintiff's counsel, that there is no averment of the presenting a petition to the first judge. He insists that the petition should state all the facts sufficient to confer jurisdiction, &c.

The plea avers a disagreement between the plaintiff and defendants as to price, in substance as required by § 9, Laws of 1834, p. 440 ; and that while such disagreement existed, John McLean, jun. first judge, " on the petition of the defendants in writing, duly issued and delivered his warrant to the sheriff," &c. (1.) This is an averment of the presenting a petition. It is not an argumentative, inferential statement, but a direct affirmation, upon which issue could be taken. (1 *Chit. Pl.* 309. 1 *Saund.* 235, *n.* 8.) In replevin, cognizance by defendant in right of his wife who was tenant for life, for *rent being in arrear.* Special demurrer, because it was not averred that the wife was alive. It was held that the words "*being in arrear*" was an averment that the wife was alive. (2 *Lev.* 88.) (2.) It is pleaded in the language of the law. The statute does not prescribe what shall be contained in the petition. In this respect it differs from the insolvent laws, (1 *R. L. of* 1813, 460,) the six first sections of which show what it must contain to give jurisdiction. And see *Service* v. *Heermance,* (1 *John.* 91.)

The judge could only act on the *petition of the defendants,* and the latter could not petition except in case of a disagreement as to price. The disagreement is averred, and the action of the judge is expressly stated to be on the defendants' petition. It is therefore necessarily implied that a petition was presented.

It is also objected that the plaintiff had no notice of the drawing of the jury by the clerk, sheriff and first judge. If by this is meant that no notice in writing was served upon him, of the

Polly *v.* Saratoga and Washington Railroad Co.

time and place of such drawing, the objection is founded in truth. But such written notice was not required by the 9th section of the act. All that is demanded by that section is that the judge on receiving the petition shall direct the sheriff of the county to give public notice in at least one newspaper printed in the said county, that at some future day not less than thirty days from the first publication of the said notice, the clerk of the county and the said judge will proceed to draw, at the clerk's office, the names of twelve persons, &c. The plea alledges that the judge appointed the day for this drawing, issued his warrant to the sheriff requiring him to give the notice by publication, and that said sheriff did publish the notice as required by law, in a public newspaper in said county, the name of which is given. These facts are admitted by the demurrer. The plaintiff, there-fore, had precisely the notice which the statute required. It was not necessary to set out the names and places of abode of the twelve jurors who were drawn. It is never usual in the record to insert the names of any other jurors than those sworn in the cause. The statute is silent on the subject, and the practice in analogous cases should govern. It is objected that none but the judge who attended at the drawing of the jury could issue a warrant to summons the jury, and none such is averred to have been issued. It is true the ninth section does not contemplate the state of things which actually happened. It provides for the case of sickness or inability of the judge, but not for the case of an abrogation of his office by an entire change of the organic law. The new constitution and the judiciary act pro-vided for this contingency, and the plea sets out the transfer of the proceedings from the late first judge of the court of common pleas of Washington county, to the county judge elected under the new constitution. And the plea also states that the county judge having thus become possessed of the proceedings, issued his warrant to the sheriff, requiring him to summons the said twelve jurors so drawn as aforesaid, to be before him at a certain day and place. And it is averred also, that a certificate of the drawing of the jurors, containing their names and places of

abode, was given to the sheriff. This was a compliance with the statute.

On the return day of the warrant, eleven of the jurors, so drawn, appeared, and the sheriff returned as to the other, that he was a non-resident of the county at the time of the drawing, and still was, and could not for that reason be summoned, and was not in fact summoned. The plea states that the jurors were drawn in the same manner as the names of persons were then drawn for juries in courts of record; that no objections were then and there made to either of them; that they were not residents of any town through which the said railroad passed, nor of kin to any of the persons claiming damages or interested in said road, nor of kin to any person who was so interested, or who claimed such damages; nor were any of them dead or insane or permanently removed from said county, to the knowledge or belief of any person so attending such drawing as aforesaid. It thus negatives the existence of any fact which would have required the setting aside a person drawn, and the drawing another. (*See 9th section Laws of* 1834, *p.* 440; 2 *R. S.* 414.) Perhaps these averments were unnecessary; but they are not objected to upon that ground, and stand admitted by the demurrer. The objection is, that only eleven jurors were in fact summoned; and it is insisted that, as the 9th section of the act has not provided for this contingency, the whole subsequent proceedings have been irregular and void.

If the failure to summon one of the twelve persons drawn, was occasioned by the act of the defendants, it would afford ground for the argument that they intended to diminish the plaintiff's chance of having an impartial jury. But the cause for his not being summoned is conceded by the demurrer, and it presents as satisfactory a reason as if the juror had died between the drawing and the return day of the venire. It is enough that this omission to summon him proceeded from a cause over which the defendants had no control. Nor are the defendants responsible for not knowing, at the time the jurors were drawn, that the person in question had permanently removed from the county. The plaintiff had such notice of this drawing as the statute re-

Polly *v.* Saratoga and Washington Railroad Co.

quired, and might, had he attended, and known the fact, have communicated it to the clerk and thus caused another name to be drawn. But in truth no blame is imputable to any one. The ninth section, by requiring that only six jurors shall be taken by lot, to make the assessment, out of the twelve names drawn from the county jury box, goes upon the ground that it may be inconvenient for the whole twelve to attend. The objections to the jurors are required to be made at the time the twelve names are drawn, and it is for that purpose that notice is required to be given in the public paper. The whole proceeding is made as nearly as possible analogous to drawing juries in courts of record. In these courts we have first the notice of the drawing; then the drawing a larger number than is required to form a jury; and lastly, the summoning the jurors so drawn. It rarely happens that all the persons drawn from the box are summoned to attend court. Some will have died or left the county, before the drawing, and this fact be unknown to either the judge, clerk or sheriff. But it has never been supposed to be an objection to the jurors drawn for a given action, that the entire panel had not been summoned, when the omission was not attributable to the fault of the adverse party. It satisfies the claims of the 9th section if the sheriff summons all the persons drawn who are in life and within his jurisdiction, and six can be taken by lot from that number, free from exceptions. The demurrer concedes that this was done on the present occasion. Such is the practice under the act " of summary procedings to recover the possession of land in other cases," (2 *R. L.* 514, §§ 35, 36.) Under the latter act, the sheriff is required to summon the eighteen jurors nominated by the judge, and twelve of the persons so summoned are balloted for, and drawn, in like manner as jurors in courts of record. It has never been supposed that the non-attendance of one of the eighteen would oust the judge of jurisdiction.

Another objection to the plea is that the county judge continued the proceedings by adjournments. This it is urged he had no right to do, and that it worked a discontinuance. To this there are two answers: First, although the 9th section does not, in terms, authorize an adjournment from day to day, yet it obvi-

Polly *v.* Saratoga and Washington Railroad Co.

ously implies that the proceedings may be thus continued. It allows to the judge three dollars, and each of said jurors the sum of two dollars, for *each day employed in the aforesaid assessment ;* and it requires the railroad company to pay the sheriff for his services such sum as the judge shall certify to be reasonable and proper, and such other incidental expenses, including witnesses' fees, as the said judge shall determine to be just and equitable. If the matter had been required to be closed at a single sitting, the compensation of the judge, sheriff and jury, would probably have been regulated by the fee bill in similar cases. The act of April, 1820, relative to landlords and tenants, under which the cause of *Nichols* v. *Williams,* (8 *Cowen,* 13,) arose, gave to the magistrates and officers the like fees as for similar services under any other act or acts. (*Laws of* 1820, *p.* 178, § 6.) This would have allowed the judge a shilling for judgment, and the like fee to each juror. These fees were revived in 1823, but the law still gave a specific sum for each service, and not a per diem allowance. (*Laws of* 1823, *p.* 429, § 35, 46th *session.*) The case of *Nichols* v. *Williams,* (*supra,*) went upon the ground that the law gave no authority to adjourn, and that an inferior jurisdiction must strictly pursue the authority under which it acts. That case is inapplicable, because the statute in the present case devolves upon the judge and jury duties which can not be performed without an adjournment, and the compensation is graduated upon the assumption that an adjournment will be necessary. Second; it appears by the plea, that at the day when the plaintiff's damages were assessed, the parties all appeared, without objection. Although an appearance might not confer jurisdiction where none existed before, it would be a waiver of any irregularities which might have taken place.

It has been urged that the plaintiff had no notice of the drawing of the jury and of the assessment. It has already been shown that he had the notice required by law, of the first drawing of the jury; and it is averred in the plea, and admitted by the demurrer, that he had fourteen days' notice of the time and place where his damages were to be assessed, and that he actually appeared and contested the assessment, without objection

as to the notice. This is all the notice which the statute required.

It is said also that some portions of the plea relate to the claims of other landholders for damages, with which the plaintiff has no concern. It is urged that this matter is surplusage. In giving a full detail of the steps taken by the defendants, under the 9th section of the act, to cause the damages to be assessed on account of the construction of the railroad, it was probably necessary to mention the disagreement as to price, between the defendants and others besides the plaintiff. The several cases were doubtless embraced in the same petition to the judge, and a single jury was summoned for all. It was not contemplated by the act that a separate jury should be drawn for each case. This is clear from the language of the 9th section, speaking of the qualification of the jurors : they are not to be of kin to any *person claiming damages,* or interested in the said road, or of kin to those who are. And this is fortified by the *mode* in which they are to be compensated for their services, viz. a per diem allowance, and not a stated fee. But suppose all the matter of the plea, relating to the other persons whose lands were taken, and with respect to which there was a disagreement as to price, was surplusage, the objection can not be taken by demurrer. It does not prejudice the plaintiff's right. It is not contradictory to any other matter in the plea, or repugnant to it. It therefore comes within the rule of pleading, that surplusage does not vitiate, *utile per inutile non vitiatur.* (1 *Chit. Pl.* 232. 4 *East,* 400. 2 *Saund.* 306, *n.* 14.) The remedy for expurgating useless matter from a plea is not, in general, a demurrer.

It is objected that the proceedings were not regularly transferred from the first judge of the court of common pleas to the county judge, in this, that the former directed them to be transferred to the latter, on giving to the owners of the land, with respect to which there was a disagreement as to price, one day's notice of the order, and that no such notice was given. There is not, indeed, any direct averment in the plea of such notice. But it is alledged that such proceedings were thereupon had, by vir-

Polly *v.* Saratoga and Washington Railroad Co.

tue of the said order, and of the statute in such case made and provided, that the said proceedings became and were transferred. All the subsequent proceedings, and the plaintiff's appearance on the assessment of the damages, are stated in the plea, as having transpired after such transfer. No objection was made before the county judge, by the plaintiff, that he had no notice of the transfer. This notice was for his benefit, and a subsequent appearance by him was, therefore, a waiver of it, or an admission that it had been regularly served. But in fact the plea avers that the plaintiff had fourteen days' notice of the transfer, and of the appraisement.

Another reason assigned in the special causes of demurrer, against the regularity of the transfer, is that by the 9th section of the act the proceedings were instituted before Judge McLean, first judge of the *court of common pleas* of the county of Washington, and the order for transferring the proceedings is signed by him as first judge *of the county courts* of that county. If his title had been omitted entirely, the transfer would have been equally effectual, as it was made by the person before whom the proceeding was pending. The constitution of 1821 designates the local judges as judges of the county courts, but they are frequently described in statutes, by the name of the particular courts of which they are judges. The first judge of the county courts, and the first judge of the court of common pleas of the same county, was one and the same person, not only in this, but in all cases.

Again; it is said that the appraisement was irregular because the jury merely appraised the value of the land, and omitted to appraise the damages which the plaintiff sustained by reason of the appropriation thereof to the use of the defendants. This objection is not founded in fact. The certificate of the jury recites *that they were sworn to appraise the lands of the said plaintiff situate along and adjoining the line of the railroad of the said company as at present located in the town of Whitehall in said county, and the damages the said plaintiff shall sustain by reason of the appropriation of said lands to the use of the said company;* that having heard the proofs and allegations of

the parties, they do upon their oaths appraise the same at five hundred dollars. It then proceeds and sets out the premises by metes and bounds as contained in the survey made by the defendants' engineer. The certificate follows the language of the statute, and is not obnoxious to the criticism made upon it by the demurrer. The statute does not require that the price of each separate piece of land should be separately stated.

It is objected that the plea does not directly aver that the defendants deposited the said five hundred dollars to the credit of the plaintiff, nor specify the kind of proof which was given to the county judge, before he made his decree. The plea is in the precise language of the act, which is that upon proof to the said judge, to be made within thirty days after such assessment, of payment to the owner, or of depositing to the credit of the owner, in such incorporated moneyed institution as the said judge shall direct, of the amount of said award, and the payment of all expenses, the said judge shall make an order or decree particularly describing the land and reciting the appraisement of damages, and the mode of making it, and all other facts necessary to a compliance with the 9th section; and when the order is recorded in the county clerk's office, the said corporation shall be possessed of all such land or real estate, and may enter upon and take possession, and use the same for the purpose of the said road. It was superfluous to set out any other facts in the plea, than the statute required. Enough are averred to vest the title in the defendants for the purposes contemplated by the act. The plea then sets out the decree *in hæc verba*, which recites all the material facts, from the first disagreement as to price, to the final decision. This was sufficient.

The plea sets out all the facts necessary to confer jurisdiction on the officer; it concedes the plaintiff's title to the land; avers that it was necessary, and shows the location of the road; states the disagreement as to price, and that an application was made by petition to the first judge, and that he directed notice to be given by the sheriff as required by law, for the drawing of the jury, which was done; that the jury were drawn as by law required; that the proceedings were transferred under the constitution

and the 76th section of the judiciary act of 1847, and the subsequent steps, down to and including the decree. In my judgment the plea makes out a complete defense, and is good in form as well as in substance.

I have looked into many of the cases to which we were referred on the argument, and find none of them settling any principle incompatible with the validity of this plea. The general doctrine, that an inferior tribunal must strictly pursue the authority under which it acts, is not questioned. As there had been, in this case, a full and substantial compliance with the act, and as the act, however defective in some respects, is believed to be constitutional, the plea affords a complete bar to the action.

There must, therefore, be judgment for the defendants on the demurrer to the second plea, with leave for the plaintiff to reply, on payment of costs.

CADY, J. concurred.

HAND, J. dissented.

Judgment for defendants.

----

MONROE GENERAL TERM, September, 1850. *Welles, Selden, and Johnson,* Justices.