H. LIVINGSTON *against* E. P. LIVINGSTON.

Injunctions are granted to prevent *trespasses*, as well as to stay waste, where the mischief would be irreparable, and to prevent a multiplicity of suits.

As where there was a claim by the defendant to *estovers* in the land of the plaintiff, and there had been an action of law decided in favour of the plaintiff, and another suit was pending on the same question.

THE bill stated, that the plaintiff was seised and possess- *December* 30. ed, by himself and his tenants, of a tract of land in the manor of *Livingston,* being part of great lot No. 4, in the town of *Livingston,* and lying to the north and west of *Ruleff Janse's Kill.* That he derived title by the will of his father; which he set forth, and the title, as far back as 1728. That the defendant has, in his own right, and in right of his wife, a number of tenants, in the town of *Clermont ;* and they, by authority derived from or under him, had, shortly before filing the bill, entered upon the land of the plaintiff, and cut wood and timber; and the defendant declared, and directed his tenants to declare, that he and they had right so to do, for *the use of their houses and upon their farms in Clermont.* That the plaintiff's father and grandfather always held and enjoyed the said manor as an absolute and unencumbered estate, in fee, saving only the rights of their own tenants, holding under them ; and no right to cut wood there, by any person residing in *Clermont,* had been assented to or exercised. That in 1812, *Elias Hicks,* who resided in *Clermont,* as tenant of *R. R. Livingston,* father of the wife of the defendant, and under whom the defendant

1822.

LIVINGSTON
v.
LIVINGSTON.

claims, cut wood on lot No. 4, and in that part now pos-sessed by the plaintiff, and the father of the plaintiff sued him in trespass ; that *Hicks* undertook, by plea, to justify, as tenant of *R. R. L.*, who *claimed*, for himself, and his te-nants of *Clermont*, a right to cut and carry away wood from the manor of *L.*, necessary for their families and farms in *Clermont ;* and the agent of *R. R. L.* defended the suit. That the cause was tried at the *Columbia* cir-cuit, in *August*, 1815 ; and, after the defendant had given his proof, the Chief Justice ruled, that the plaintiff was entitled to recover ; but a verdict was taken for the plain-tiff, at his request, subject to the opinion of the Supreme Court, upon a case to be made, and the damages were as-sessed at 100 dollars for the wood and timber cut. A simi-lar verdict was taken, also, in another similar case, against *Marks Platner.* That the case against *Platner* was ar-gued and decided in the Supreme Court, in favour of the then plaintiff, (a tenant of the father of the plaintiff,) and the defendant, and all claiming under him, have desisted, since, from trespasses on the wood, &c., until the death of the father of the plaintiff, in *November.* last. That the plaintiff has given directions to have the case brought to argument in the suit against *Hicks ;* but the trespasses, in the mean time, will greatly injure the value of the plain-tiff's estate. *Prayer*, for an injunction to restrain the de-fendant and his tenants from cutting timber, &c.

*E. Williams*, for the plaintiff.

THE CHANCELLOR. This is not the case of a stranger entering upon the land, as a trespasser, without pretence of right, and cutting down timber. In such a case, Lord *Thurlow*, in *Mogg* v. *Mogg*, (*Dickens' Rep.* 670.) refused to interfere by injunction. This is analogous to a case before Lord *Camden*, referred to by the counsel in *Mogg* v.

*Mogg*, and which Lord *Thurlow* seemed to approve of. It was, where a defendant claimed a right to *estovers*, and, under that right, cut down timber; there was a claim of right, and, until it was determined, it was proper to stay the party from doing an act, which, if it turned out he had no right to do, would be irreparable. So, also, in *Harson* v. *Gardiner*, (7 *Vesey*, 305.) the injunction was granted, where the defendant claimed common of pasture and *estovers ;* and, in that case, Lord *Eldon* observed, that the law, as to injunctions, had changed very much, and they had been granted much more liberally than formerly. They were granted in trespass, when the mischief would be irreparable, and to prevent a multiplicity of suits.

In *Mitchell* v. *Dors*, (6 *Ves.* 147.) the defendant, in the process of taking coal, had begun to work into the land of the plaintiff, and though this was strictly a trespass, yet the injunction was granted, because irreparable mischief would be the consequence if the defendant went on. In *Hamilton* v. *Worsefold*, and in *Courthope* v. *Mapplesden*, (10 *Ves.* 290, and note, *ibid.*) injunctions were granted against a trespasser entering with permission, or by collusion with the tenant, and cutting timber.

Lord *Eldon* repeatedly suggested the propriety of extending the injunction to trespasses, as well as waste, and on the ground of preventing irreparable mischief, and the destruction of the substance of the inheritance. The distinction, on this point, between waste and trespass, which was carefully kept up during the time of Lord *Hardwicke*, was shaken by Lord *Thurlow*, in *Flamang's* case, respecting a mine, and seems to be almost broken down and disregarded, by Lord *Eldon*. This protection is now granted in the case of timber, coals, lead ore, quarries, &c.; and " the present established course," as he observed in *Thomas* v. *Oakley*, (18 *Ves.* 184.) " was to sustain the bill for the pur-

1822.

LIVINGSTON
v.
LIVINGSTON.

Injunctions granted against trespasses, as well as against waste, under special circumstances.

1822.

LIVINGSTON
v.
LIVINGSTON.

Cases of trespass, in which injunctions have been granted, in order to preserve the estate from destruction.

pose of injunction, connecting it with the account, in both cases, and not to put the plaintiff to come here for an injunction, and to go to law for damages."

The injunction was granted in *Crockford* v. *Alexander*, (15 *Ves.* 138.) against cutting timber, when the defendant had got possession under articles for a purchase; and in *Tworl* v. *Tworl*, (16 *Ves.* 128.) against cutting timber between tenants in common; and in *Kender* v. *Jones*, (17 *Ves.* 110.) where the title to boundary was disputed; and in the case of *Earl Cowper* v. *Baker*, (17 *Ves.* 128.) against taking stones of a peculiar and valuable quality at the bottom of the sea, within the limits of a manor; and in *Gray* v. *Duke of Northumberland*, (17 *Ves.* 281.) against digging coal upon the estate of the plaintiff; and in *Thomas* v. *Oakley*, (*ubi supra*,) against exceeding a limited right to enter and take stone from a quarry. In all these cases, the injury was considered a trespass, and in two of them it was strictly so; and the principle of the jurisdiction was to preserve the estate from destruction. But I can safely allow the injunction in the present case, without going to the extent of these latter cases, or following the habit, as Lord *Eldon* termed it, in *Field* v. *Beaumont*, (1 *Swanston*, 208.) of the *English* Chancery, in granting injunctions in cases of trespass as well as of waste. Here has been one action of law, in which the claim of the defendant to estovers in the lands of the plaintiff has received a decision against him, and there is another suit at law still depending, in which the same question arises. It is just and necessary to prevent multiplicity of suits, that the further disturbance of the freehold should be prevented, until the right is settled; and the case decided by Lord *Camden*, is a sufficient authority for the interposition asked for in this case.

An injunction is not granted in case of mere trespass, and where there is a legal remedy for the intrusion.

The recent decision by the Vice-Chancellor, in *Garstin* v. *Asplin*, (1 *Madd. Ch. Rep.* 150.) shows, that it is not the general rule, that an injunction will lie in a naked case

of trespass, where there is no privity of title, and where there is a legal remedy for the intrusion. There must be something *particular* in the case, so as to bring the injury under the head of quieting possession, or to make out a case of irreparable mischief, or where the value of the inheritance is put in jeopardy.

.Injunction granted.