EDWARD FOX, RESPONDENT, *v.* MICHAEL H. FITZSIMONS, APPELLANT.

*Trespass — when it will be restrained by an injunction — when a court of equity will award damages therefor.*

A court of equity has jurisdiction over an action brought by the owner of a city lot to restrain the owner of an adjoining lot from removing a division fence and entering upon and excavating the plaintiff's lot, and erecting a building thereon, whereby the foundation of the plaintiff's house will be damaged and the free access of light and air to its windows impeded and destroyed.

In such an action it is proper for the court to determine and direct a judgment for the damages, sustained by the plaintiff by reason of the trespasses committed immediately preceding the commencement of the action.

APPEAL from a judgment in favor of the plaintiff, entered upon the report of a referee.

This was an equity action, brought to restrain the defendant from entering upon certain premises and excavating and removing the earth therefrom, and restraining him from erecting a building thereon. The plaintiff is the owner of a lot in the business part of the city of Rochester, the south front being upon Centre street, twenty-seven feet front, and fifty feet deep, upon which there was erected a brick building, used as a blacksmith shop. The defendant was the owner of a lot fronting on the same street, and adjoining the plaintiff's premises on the east, twenty feet front and fifty feet deep.

These pieces of land were of considerable value. The strip of land in controversy was two feet and three inches in width, running from Centre street to the rear of these lots and on the east side of the plaintiff's blacksmith shop.

At the time of the commencement of this suit, and for the period of four years prior thereto, this strip was enclosed by a board fence, running from the line of Centre street to the rear of the lot, and the space between the east wall of the shop and the fence was occupied by the plaintiff as a place for the storage of such articles as could be placed therein, the street end being closed by a gate. The defendant claims that the west line of his lot comes up to the east wall of the plaintiff's shop as the same now stands.

On the 20th day of June, 1880, a few days before the commencement of this suit, the defendant tore down the fence and commenced excavating and removing the earth on the strip in question, digging down beside the foundations of the plaintiff's shop and exposing the same, and threatened to erect a brick building on his lot, laying the west wall close beside the east wall of the plaintiff's building, and occupying all of the land in dispute. In the plaintiff's east wall there are windows from which the light and air would be entirely excluded if the defendant's building should be erected as contemplated.

The referee in his findings of fact, determined that the plaintiff has the record title to the *locus in quo*, and refused to hold and find that the same had been held adversely by the defendant, and those under whom he claims, for a period of twenty years, and refused to find that there had been any practical location of the line, as

claimed by the defendant, so as to estop the plaintiff from asserting his record title.

The judgment perpetually enjoined the defendant from erecting or constructing any wall, building or other structure, upon the premises, and from trespassing thereon in any manner, and awards to the plaintiff fifty-seven dollars as damages for the actual trespass committed.

*A. L. Barton*, for the appellant.

*Smith & Briggs*, for the respondent.

BARKER, J.:

For trespasses upon real estate the general rule of law is for the injured party to seek redress and indemnity for the wrong committed by an action in the common-law courts for damages sustained, a jury assessing the amount thereof.

Courts of equity in this State have not general jurisdiction to restrain by injunction all sorts of trespasses threatened to be committed to or upon real property; but to this proposition there are exceptions which have long existed where the circumstances of the case are peculiar and such that it could be clearly seen if the injury threatened is suffered to be done, it will cause irreparable mischief to the owner of the estate, or lead to a multiplicity of suits, or the value of the inheritance be put in jeopardy by a continuance of the trespass.

If the suitor is able to present a case falling within any of the exceptional instances, relief is granted without the slightest hesitation, to prevent a failure of justice. The difficulty which arises when a resort is made to a court of equity for relief is for the court to determine whether the facts presented are of such a nature as to bring the same within either of the classes over which jurisdiction is conferred.

By frequent adjudications, extending over a long period of time in England and in most of the American courts, courts of equity have granted injunctions to protect mines, quarries and growing timber, to prevent encroachment upon the rights of the proprietors of running waters, and to compel a restoration of the stream to its natural channel, and to settle disputes respecting the boundaries of

estates where one of the claimants is about to cut down timber or ornamental trees growing on the disputed land or to erect a building thereon. (Story's Eq. Jur., §§ 928, 929; *Livingston* v. *Livingston*, 6 Johns. Ch., 497; *Kinder* v. *Jones*, 17 Ves., 110; *Creeley* v. *Bay State Brick Co.*, 103 Mass., 514; High on Injunctions, §§ 704, 707.)

The acts which the defendant threatens to do, are such, if they be permitted, as will, beyond all reasonable doubt, cause irreparable mischief to the plaintiff; by endangering the safety of his building, impairing its rental value as a tenement, by obstructing the light, by breaking down and destroying land marks and by gaining full and continuous possession of the same.

The decree in the case restraining the defendant from encroaching upon the plaintiff's land, is sustained by the opinions of elementary writers and the decisions of the courts in this and many other of the States.

Mr. High, in his work on injunctions, remarks : " Perhaps no cases where preventive relief by injunction has been allowed against the commission of trespasses, better illustrate the nature and grounds of the jurisdiction than those in which the aid of equity is invoked to prevent an encroachment upon complainant's soil, by excavating on the part of an adjacent owner, or by the destruction of complainant's wall in building operations upon adjacent premises; and the right to relief in this class of cases is well established. For example, where complainant and those under whom he claims have been for many years in possession of lands, and defendant, an adjacent landowner, has pulled down the division fence, and is proceeding to excavate the soil of complainant's land, for the purpose of erecting a building partly upon his premises, a fitting case is presented for relief by injunction, the injury going to the destruction of the inheritance.

" So when defendants, in erecting a building upon a lot adjoining the premises of complainants, are removing bricks from the wall of their building, to its great injury and detriment, the act, although a trespass, is of such an irreparable character as to warrant an injunction." (Secs. 704–707.)

Where the trespass complained of consists in the erection of buildings upon complainant's land, a distinction is taken between the buildings when in an incomplete and when in a finished state;

and while jurisdiction is freely exercised before the completion of the structures, yet if they have been completed, the relief will generally be withheld, and the person aggrieved left to his action by ejectment.

In *Creeley* v. *The Bay State Brick Company* (*supra*), the defendant, acting under a mistake as to the true boundaries between its own premises and those of the plaintiff, was constructing a causeway of two or three feet in height, and about twenty-five feet in width, across the plaintiff's land, without his consent and in violation of his rights. The court held that the facts brought the case clearly within the equity jurisdiction of the court, and granted an injunction restraining the defendant from completing the structure, and commanding him to desist making further encroachments upon the plaintiff's premises.

The right to interfere by an injunction to prevent a trespass was directly admitted in the case of *The Tribune Association* v. *The Sun* (7 Hun, 175). There the defendant threatened to place materials temporarily upon the plaintiff's premises while repairs were being made to its own building on the adjacent lot. The plaintiff showing that the use of its premises was essential to the enjoyment of the buildings erected thereon, and that the use by the defendant would be a material interruption; the court held that upon these facts a case was made for relief.

The case at bar is, in principle, like the case of *Johnson* v. *The City of Rochester* (13 Hun, 285), and there the court remarked: "Although the general rule is that an injunction will not be granted to restrain a mere trespass without special equitable features in the case, it is well settled that such equitable features exist when there is vexation from repeated or continued trespass in the nature of a nuisance, or when the wrongful acts, continued or threatened to be continued, might become the foundation of adverse rights, and would occasion a multiplicity of suits to recover damages."

The court having gained jurisdiction for the purpose of restraining the defendant, it was proper to award damages to the plaintiff for the injuries sustained by the trespasses committed immediately preceding the commencement of the action.

The plaintiff objects to the court maintaining jurisdiction over this case as a suit in equity, for the reason that it deprives him of the

right of trial by jury on a question of title to real estate. He could have secured that privilege and had his claim of title determined by a jury if he had resorted to an action of ejectment instead of taking the law into his own hands and with violence attempting to seize the possession of the lands within the plaintiff's enclosure, and of which he was in peaceable possession.

Upon the trial the defendant called as a witness Owen McLane. He is the husband of Bridget McLane, they being the defendant's grantors, the title, however, being vested in the wife alone. He testified to conversations between himself and the defendant concerning the boundary line, indicating that at the time of the purchase the defendant was informed that the line between the lots was as the plaintiff claimed and as the referee found. He was asked the following question: "Did you ever claim to have any title to that strip of two and one-half feet." Question objected to by defendant as incompetent and immaterial. The same was overruled and the defendant excepted and the witness answered in the negative.

This evidence was surely competent if material, as the witness was in actual occupation before the plaintiff erected the fence along the line. It was competent as bearing upon the question whether he and his wife did actually occupy the strip of land in dispute. If, however, it was immaterial evidence, we are unable to perceive how it could have any effect and influence on the mind of the referee in disposing of the question of adverse possession. The question put to Patrick Holeran is of the same character and import. The defendant, in giving proof upon the question of adverse possession, gave evidence showing that one McLane had erected a fence in front of his lot along Centre street and attached it to the corner of the blacksmith shop. The plaintiff was permitted to testify, over the defendant's objection, that McLane asked permission and that he gave consent that the fence might be connected with the corner of the shop. That was competent proof to give, to meet and explain that circumstance. The plaintiff's lot is the rear part of lot 47 and the defendant's the rear part of lot 16 as they were originally laid out and are designated upon the map in evidence. Ephraim Gilbert was at one time the owner of the original lot 16, and he died in 1848. The defendant offered to prove that Gilbert while in possession of the lot said that lot 16 was 102 feet deep. Lot 16, as laid down

on the map and described in Gilbert's deed, was 100 feet deep, and no more.

It was not error to reject the offer.

All of the rulings of the referee in receiving and rejecting evidence have been noticed and were correctly made.

The evidence upon the question as to the record title of the premises, has been very carefully examined, and we concur in the finding of the referee on that subject, and deem a fair balance of the proofs to be in support of the finding on that question.

The question of adverse possession and practical location, received a very careful and intelligent consideration by the referee, whose opinion is before us, and we adopt the same as a proper disposition of those issues.

The judgment is affirmed.

Present — SMITH, P. J., HARDIN and BARKER, JJ.

Judgment affirmed, with costs.