SOUTHERN PAC. R. CO. v. CITY OF OAKLAND et al.

(Circuit Court, N. D. California. August 21, 1893.)

1. PRELIMINARY INJUNCTION—ENJOINING TRESPASSES.

A preliminary injunction will be granted to restrain city authorities, in opening a street, from the removal of a fence, building, and tracks of a railroad from wharf property necessarily connected with the railroad system in its state and interstate business, since such removal constitutes a trespass which goes to the destruction of the property in the character in which it is enjoyed by the railroad company.

2. SAME—EXTENT OF PRELIMINARY INJUNCTION.

A preliminary injunction merely preserves matters in statu quo, and cannot direct the restoration of property to its condition before being disturbed.

In Equity. Bill by the Southern Pacific Railroad Company against the city of Oakland and others. Heard on motion for a preliminary injunction. Granted.

W. F. Herrin, H. S. Brown, A. A. Moore, and J. E. Foulds, for complainant.

Jas. A. Johnson, E. B. Pomeroy, W. L. Hill, W. R. Davis, E. J. Bringle, and H. A. Powell, for respondent.

McKENNA, Circuit Judge. A precise and detailed definition of the issues as to title is not necessary. Generally it may be said that the plaintiff alleges title, and the confirmation of this title by a judgment for the premises, obtained by C. P. Huntington against the city of Oakland in this court, and alleges certain acts of encroachment done, and others threatened. The defendants deny the title of the plaintiff and the judgment, and assert title in the city of Oakland, and the dedication, besides, of the premises as a public highway, and justify the acts of encroachment by their authority and duty as public officers.

These titles and rights of the parties, respectively, remain to be established; but the plaintiff alleges that it entered into possession of the whole of said premises on the 1st day of January, 1890, and ever since has been, and still is, in the possession thereof as a common carrier by railroad, and engaged in the transportation of s'ate and interstate commerce; that in connection with its lines of railroad, and as an adjunct and necessary appurtenance thereto, and for the purpose of maintaining communication between portions of its road situated in San Francisco and the county of Alameda, it operates lines of steamers, one of them running into the estuary of San Antonio, and landing at a wharf or slip upon the said premises; that upon the premises there are also railroad tracks, warehouses, etc., all of which, with the personal property contained in them, were and are used in, and are necessary in the prosecution of, its business, and from the date last aforesaid until the 6th day of July, 1893, it was quietly in the possession of all of said premises, and the improvements and fixtures appurtenant thereto, and used and operated the same for the purpose aforesaid; and that all of it had

been continuously by plaintiff, and its predecessors in interest, used for like purpose for a period aggregating 23 years prior to January, 1890.

The answer admits that plaintiff went into possession on the 1st day of January, 1890, and is a common carrier, as it alleges, and has on the premises the structures alleged, but denies that the tracks, offices, or structures were or are necessary to the prosecution of its business. The defendants also admit that the plaintiff was quietly in possession, but "deny [I quote literally] that all the property and premises aforesaid have been continuously by the complainant, or its predecessors in interest, used for a period aggregating twenty-three years." By a well-known rule of the construction of pleadings this denial puts in issue the exact period of possession only, and it is consistent with a possession for a period aggregating 22 years. A long time, and pending an inquiry as to its rightfulness or wrongfulness, entitled the plaintiff to protection, if the acts of the defendants may be restrained by a court of equity. Northern Pac. R. Co. v. City of Spokane, 52 Fed. Rep. 428. That as to these acts the bill alleges that the defendants are the mayor and council of Oakland and its superintendent of streets, respectively. That the defendants, accompanied by a large body of men, with great violence, and in a riotous manner, entered into and upon the premises, and tore up certain of the railroad tracks thereon, pulled down certain of the fences and structures thereon. And plaintiff also alleges that the defendants will continue to disturb the possession of the plaintiff, and tear up and remove the remaining tracks and structures, and interfere with the replacement of those removed, and prevent plaintiff from exercising its franchises. There is also an allegation of a threat of defendants as mayor and council to pass orders to enable the Davie Ferry & Transportation Company to take possession of the property, and of threats of arrest of plaintiff's servants.

The answer of defendants is that the possession of plaintiff was that of an intruder and trespasser, and that its possession was maintained in part by means of a high and strong fence erected and maintained across the entire width of said wharf, and prevented the use thereof as a public street and wharf by the public, or by any common carrier except the plaintiff. That the defendant Harrison, as superintendent of streets, and in the performance of his duties, and in pursuance of the direction of the mayor and council of the city, on the 6th day of July, 1893, in a peaceable and quiet manner, and with only such assistance and workmen as were necessary, removed with all possible care, to avoid injury thereto, the said fence and a small frame building or cabin and its contents from the roadway of said Broadway wharf. The defendants deny that they tore up railroad tracks, except a small portion, and this only because it was necessary to prevent the plaintiff from blockading the street with a train of cars brought there for the purpose. The defendants also deny that they intend to interfere with or disturb the plaintiff's use or possession of the premises, consistent with the use by the public, and allege an intention, by lawful means and agen-

cies, to keep the same free and open as a public highway, and deny the intention to enable the Davie Transportation Company to take possession of the premises.

It is claimed by the defendants that their acts were and will be but trespasses, and cannot be enjoined. It is well settled that trespasses, as such, which are susceptible of pecuniary compensation, will not be enjoined, but it is as well settled that, if they are not so susceptible, they will be enjoined. The immediate premises are a wharf,—a necessary connection, it is said, with the plaintiff's railroad system, and an adjunct of its business, state and interstate. If this is true, it would be hard to assign it a money value. The money worth of a part of a great system would be very difficult to estimate, and it would not be easier if the boat line is independent of the railroad system, as alleged by defendants. In such case, who could fix, or by what test could be fixed, a money measure of damages to the plaintiff if the city of Oakland should assume control of the wharf pending the litigation, as it claims the right and asserts the purpose to do, and deny its use to the plaintiff, or give it only a partial use with other boat lines. Besides, even if the acts of defendants are "trespasses" in the ordinary sense, (and so to call them is to underrate them and their purpose,) they go to the destruction of the property in the character in which it is enjoyed, and may be properly enjoined. This is clearly decided by the case of Jerome v. Ross, 7 Johns. Ch. 315, cited by defendants. See, also, Dying Establishment v. Fitch, 1 Paige, 97, and Livingston v. Livingston, 6 Johns. Ch. 497; 2 Story, Eq. Jur. § 928. But the acts of the defendants are not trespasses in the ordinary sense; that is, mere fugitive and temporary intrusions on another's right. They are acts of ownership, and, if executed, will amount to a permanent appropriation of the property. This right may or may not be ultimately established in the city of Oakland. It may not now be assumed.

But what should be the extent of the preliminary injunction? The defendants contend that it cannot be made to undo that which has been done. The plaintiff contends, contra, that it should have such restraint as to permit the restoration of the property to the condition it was in before it was disturbed. In 1 High, Inj. § 4, the rule is laid down as follows:

"The sole object of an interlocutory injunction is to preserve the subject in controversy in its then condition, and, without determining any questions of right, merely to prevent the further perpetration of wrong, or the doing of an act whereby the right in controversy may be materially injured or endangered. * * * The jurisdiction, therefore, being exercised to prevent the further continuance of injurious acts, rather than to undo what has already been done, on an interlocutory application for an injunction, courts of equity will only act prospectively, and will interpose only such restraint as may suffice to stop the mischief complained of, and preserve matters in statu quo."

The text is supported and illustrated by several cases. In Murdock's Case, 2 Bland, 461, the action was to restrain the erection of a fence, and to remove the fence already erected, which included part of plaintiff's land. The injunction was denied as to the fence, which was erected, the court saying "that plaintiff asked

the court now and at once to put forth in his behalf its remedial, as well as its conservative, powers," and added: "The principal object of an injunction in cases of this kind is to prevent irreparable injury by preserving things in their present state, but, if an injunction were to order anything pulled down or undone, it is obvious that it might be itself used as a means for producing that very kind of irreparable injury to the defendant which the bill charged him with being about to perpetrate against the plaintiff."

The court said, however, that there were cases which went to the verge of ordering things undone, and cited Lane v. Newdigate, 10 Ves. 193, decided by Lord Eldon. The case, however, was not followed as authority, and the comments on it in subsequent cases are instructive. Its facts were that the plaintiff, Lane, was the assignee of a lease of a mill property granted by the defendant, with covenants for the supply of water from canals and reservoirs on the defendant's premises. The allegation was that he had allowed the reservoirs to be out of repair, and had removed a certain stop gate. Lord Eldon expresses a difficulty whether it was according to the practice of the court to decree or order repairs to be done, but afterwards said:

"So, as to restoring the stop gate, the same difficulty occurs. The question is whether the court can specifically order that to be restored. I think I can direct it in terms which will have the effect. The injunction I shall order will create the necessity of restoring the stop gate, and attention will be had to the manner in which he is to use the lock, and he will find it difficult, I apprehend, to avoid completely repairing these works."

This case, as I have said, was never regarded as authority in England, and was rejected as a precedent in Blakemore v. Canal Navigation, 1 Mylne & K. 185, and the principle laid down "that only such restraint shall be imposed as may suffice to stop the mischief complained of, and, where it is to stay further injury, to keep things as they are at present."

In Farmer's R. Co. v. Reno, etc., Ry. Co., 53 Pa. St. 224, Mr. Justice Strong said:

"The sole object of such an order [an interlocutory injunction] is to preserve the subject of controversy in the condition in which it is when the order is made."

In Audenried v. Railroad Co., 68 Pa. St. 370, Justice Sharswood, a very able jurist, reviews a number of cases, and quotes with approval the language of Justice Strong, supra. The facts were that the defendants were the owners of railroads from the Schuylkill coal regions for transporting coal to the river Delaware for shipment for places outside of the state of Pennsylvania, affording the only access from some of the collieries to the market. The coal was loaded on vessels at wharves owned by the defendants, who allotted space to shippers. The space allotted to plaintiff was taken away from him and allotted to others. This action was charged as illegal, and as practically a refusal to allow plaintiff to carry on his business. The plaintiff prayed, among other things, that the defendants be restrained from refusing facil-

ities to plaintiff, and that they be restrained from allowing others as long as they refused plaintiff,—practically, a prayer against discrimination. The injunction was denied. In rendering the opinion of the court, the learned justice compares preliminary and final injunctions, confining the purpose and office of the former to restraint,—prevention simply; and this limitation is observed, he said, "by all the cases both in England and America," Final injunctions may be made mandatory, commanding acts to be done, the reason of the distinction being that preliminary injunctions are granted when the rights of the parties are in controversy. A final injunction is granted when the rights of the parties are determined. In commenting on Lane v. Newdigate, supra, which the court said in Murdock's Case went to the verge of ordering things undone, Justice Sharswood condemned both the manner and extent of the injunction granted. He said that it was "not a precedent which ought to be followed in this or any other court. A tribunal that finds itself unable directly to decree a thing ought never to attempt to accomplish it by indirection. Injunction, as a measure of mere temporary restraint, is a mighty power to be wielded by one man. It would extend far beyond all safe and reasonable bounds to permit it to go further."

The principle of these cases is announced also in the case of Northern Pac. R. Co. v. City of Spokane, already quoted, found in 52 Fed. Rep. 428, and cited by the plaintiff. This was an action in which the railroad company had erected a warehouse on what was claimed to be a public street. The city threatened to remove it. There was also a controversy as to whether the premises were within the fire limits or not, and hence subject to the order of the city as to the kind of erection. The court granted an injunction against the city as to the removal of the warehouse which was on the premises, but so modified the order as not to preclude the city from requiring an inspection of the plans for the erection of any new building, and used the following language:

"The purpose of a restraining order pendente lite, in all cases of this nature, is to preserve property which is the subject of controversy in its existing condition until a final hearing and determination of the cause; and the order should be limited so as to simply preserve the status quo, and should not give either party an advantage by proceeding in the acquisition or alteration of property the right to which is disputed, while the hands of the other party are tied."

Of course, it is contended by the plaintiff in this case that the "status quo" means the condition of the property before the disturbance. As we have seen by the authorities, this contention cannot be supported. It may be said, however, that in all these cases the injunction commanded something affirmative of the defendant; while in the case at bar the relief prayed for can be obtained by the simple repressive power of an order restraining the defendants from interfering with the plaintiff's property. This is true, but it could be made true in any other case. It is not the form, but the effect, of the order which must be regarded. If it take or permit the taking from a defendant anything he has,

it would anticipate and forejudge the merits of the controversy, and transcend, as we have seen, the purpose of a preliminary injunction. As was said in Murdock's Case, supra, it would exert before final hearing the remedial, as well as conservative, powers of the court. The acts of the defendants were means of taking possession of what is alleged to be a highway,—a possession which could be only taken by removing obstructions, and can only be retained by preventing their restoration. To enable plaintiff to restore them by restraints on defendants would enable it to take a possession it did not have at the commencement of the suit, and which, in the case of Farmer's R. Co. v. Reno, etc., Ry. Co., supra, and other cases, Justice Strong said could not be done by a preliminary injunction. The other points made and cases cited by counsel are more properly applicable at the final hearing than now. The restraining order, therefore, will be continued, but modified, so as not to permit the undoing of what has been done.